Glenn FERGUSON, Appellee,

v.

Johnny PAYCHECK, et al., John P.
Branham, Court-Appointed
Attorney, Appellant.

Supreme Court of Tennessee,
at Nashville.

May 21, 1984.

Mitchell Crawford, Franklin, Tennessee, for appellee.

Darrell G. Townsend, Steven T. Potts, Howell & Fisher, Nashville, Tennessee, for appellant.

## OPINION

FONES, Chief Justice.

This was a media event lawsuit in which the chancellor appointed John P. Branham, a member of the Nashville bar, during the discovery stage and assigned him duties which he performed and sought compensation therefor. After the parties' out-of-court settlement, the chancellor awarded Branham a fee and taxed it as part of the costs against Ferguson and Paycheck, jointly and severally.

The Court of Appeals held that the chancellor appointed Branham to represent witnesses and was without authority to make such appointment or to compensate for that purpose. We agree that the law does not authorize appointment or compensation for that purpose. We granted Branham's rule eleven application for permission to appeal to carefully review the record to determine whether counsel was appointed for the purpose of representing witnesses or to render

necessary service to the court beneficial to a solution of questions presented in the case.

## I.

It is rare and unusual that the occasion arises for the appointment of counsel by the court in a civil case and thus very few reported cases have dealt with the issue.

*Vanderbilt University v. Mitchell,* 162 Tenn. 217, 36 S.W.2d 83 (1931) was a suit to construe the terms of a trust and to approve a deviation with respect to the investment and use of principal and income. The court appointed a member of the Nashville bar as amicus curiae and directed that he brief and argue the case. He was compensated in the trial court and the opinion of this Court simply recites that the amicus curiae had moved for an additional fee for services on appeal which was allowed along with additional fees to counsel for the trustee and for defendants, all to be taxed as costs against the trust fund income.

In *Greene v. Greene,* 43 Tenn.App. 411, 309 S.W.2d 403 (1957), the chancellor appointed a member of the Memphis bar as amicus curiae in a divorce case to represent a non-resident wife who had been served by publication. After a trial, husband's suit for divorce was dismissed but the court appointed lawyer was awarded a fee that was assessed as part of the costs against complainant. On husband's appeal, Judge Bejach writing for the Court of Appeals responded to the objection to the fee as follows:

> On the subject of allowance of compensation in favor of an amicus curiae, American Jurisprudence in the treatise on Amicus Curiae, Volume II, Sec. 8, page 682, says:
>
> > "Ordinarily, no compensation is sought for at the hands of the Court by an amicus curiae. Nevertheless, it has been held that the Court has inherent power to award compensation to an amicus curiae, to be paid by the party whose acts made his appearance necessary for the information of the Court."

The above quoted language would seem to justify the allowance of compensation by the Chancellor in favor of the amicus curiae; and, ordinarily, or in most of the counties of this State, this would conclude the matter. In Shelby County, however, where this cause was tried, there is an official known as the Divorce Proctor, provided by Chapter 121, Public Acts of 1915, who appeared in the instant case ... 43 Tenn.App. at 437–38, 309 S.W.2d at 414–15.

That quotation was followed by a lengthy discourse the gist of which was that the divorce proctor was provided for Shelby County by legislative act to perform the very services for the court that the lawyer appointed by the court performed in this instance and therefore that it was improper to award a fee as part of the costs assessed against complainant.

The cases from other jurisdictions that have dealt with this issue have upheld the appointment and compensation of an amicus curiae where the purpose is to aid and assist the court rather than to represent private litigants who have direct interests in the ultimate outcome and approve the assessment of the fee as costs against the party or parties responsible for the situation that prompted the court to make the appointment. *City of Kansas City v. Kindle,* 446 S.W.2d 807 (Mo.1969); *In Re Phi Fathers Educational Association,* 203 S.W.2d 885 (Mo.App.1947); *Detroit Trust Co. v. Mason,* 309 Mich. 281, 15 N.W.2d 475 (1944).

We conclude from these authorities that the rule applicable to the court appointment of an amicus curiae is that there must exist a necessity for the services of a member of the bar to serve the court in reaching a proper resolution of questions or issues presented and pending before the court, in which case the court may award compensation to be paid by the party or parties responsible for the situation that prompted the court to make the appointment. The rule excludes the appointment of counsel to serve the interests of liti-

gants, witnesses, or any other private parties.

## II.

The status of the litigation at the time the appointment of Branham was made was described, in part, by the chancellor in his memorandum opinion awarding the fee, as follows:

This is a suit between Glenn Ferguson, Trustee for Nashville-Davidson County, and Johnny Paycheck, an entertainer. For several years during the 1970's Mr. Ferguson served as Mr. Paycheck's manager. By 1978 the relationship between them became strained and this bitterly contested litigation ensued.

Mr. Ferguson sued Mr. Paycheck in January 1979; Mr. Paycheck counterclaimed in March 1979. Notices of voluntary dismissals have been filed but no final decree has been entered.

In pursuit of Mr. Paycheck's claim that Mr. Ferguson was utilizing Metropolitan Government employees to conduct Paycheck's business, Paycheck's counsel announced his intention to depose every employee in the Trustee's office. Counsel advised the Court that the employees would be asked about Mr. Ferguson's use of public employees to conduct his private business out of the Trustee's Office.

On May 16, 1980, counsel for Mr. Paycheck filed a number of deposition notices and subpoenas for Trustee's office employees. The notices and subpoenas immediately provoked a response from Ferguson in the form of a motion to limit discovery in which he sought to restrict the scope of the employees' depositions. At approximately the same time, counsel for Paycheck filed a motion for a protective order in which he asked that Ferguson himself be prohibited from appearing at the employees' depositions and further alleged that Ferguson's attorneys were claiming to represent the employees' interests as well as Ferguson's interests. In the protective order motion, counsel for Paycheck asked that the Court enjoin Mr. Ferguson from altering the employment status of any of the employees. During one of the many prior court hearings the Court was advised that some of the employees were afraid to give depositions. That fear was supported by affidavits from some office employees which were submitted to the Court in support of the motion.

On May 21, 1980, the day before the first employee deposition was scheduled to be taken, an emergency hearing on the motions was held. The chancellor continued the depositions, took both motions under advisement and decided to appoint counsel to represent the employees. The chancellor's order stated in part:

2. The Motion of defendant, counterplaintiff, Johnny Paycheck, for Protective Orders relative to prohibiting the plaintiff, counter-defendant, Mr. Ferguson, from attending the taking of discovery depositions of employees of the Metropolitan Trustee's Office, and ordering persons present at the taking of said depositions from revealing the identity of the witnesses and what each says, and filing same under seal, and to prohibit Mr. Ferguson from taking any punitive or retributive measures against any employee-witness shall be taken under advisement until such time as an attorney is appointed by the Court to represent said employees and report back to the Court. Depositions of all employees of the Metropolitan Trustee's Office heretofore set shall be continued, except that of Glenn Ferguson and Sue Cline Ulery, until such time as the Appointed Attorney for the employees has investigated and reported back to the Court; and, the Court will meet with the employees of the Metropolitan Trustee's Office and advise them accordingly.

Against that background, as indicated above, the decisive question was whether the purpose of Branham's appointment was to represent the interests and concerns of employees of the Trustee's Office or to perform necessary services to the court in

controlling potential abuse of the discovery process.

The sources for determining the purpose of the appointment are how the chancellor and Branham described the appointment and what services Branham in fact rendered. In petitioning for a fee, Branham did not support his affidavit that "my associates and I have expended 184.9 hours," with a resume of the dates and the nature of the services rendered. When asked on cross examination if he had time records that would show the number of hours spent attending depositions of employees of Mr. Ferguson's office, Branham responded that he did. When asked if he would make them available, his lawyer responded that the records would not be made available, except for in camera inspection by the Court, because they contained notations that affected the attorney-client privilege which Branham could not waive. That issue was not pursued any further. Thus, we are limited to the descriptions of the nature of the services in the orders, affidavits, transcripts of the hearing on Branham's application for compensation, and the chancellor's memorandum opinion.

The concluding paragraph of the order appointing Branham, entered on May 31, 1980, reads as follows:

4. The Court herewith appoints John P. Branham, attorney-at-law, to represent the employees of the Metropolitan Trustee's Office.

On June 25, 1980, Branham wrote a letter to the chancellor, with copies to counsel of record, reciting that "pursuant to instructions of the chancellor" he had prepared and was enclosing an affidavit, "for your eyes only regarding the meetings I have had with employees of the Trustee's Office concerning their depositions to be taken in this case;" that Branham would be away on vacation until July 7, and it was requested that the motion for a protective order be held under advisement until that date. The letter continued as follows:

I anticipate that your ruling will receive attention in the press and I am sure that my clients will be most anxious to hear that ruling and perhaps to discuss it with me.... None of the depositions of my clients have been scheduled as yet and will not be set until after that date.

Branham's motion for a fee filed on October 17, 1980, was supported by his affidavit, referred to above, that begins as follows:

Since my appointment by the Court on May 21, 1980, to represent certain employees of the Metropolitan Trustee's Office in regard to this case, my associates and I have expended ...

At the hearing on Branham's motion for a fee, Branham's lawyer stated into the record that the attorneys for Paycheck and Gary Smith had stipulated that "a charge of seventy-five dollars per hour spent representing employees of the Metro Trustee's Office pursuant to the Court's appointment is a reasonable charge..."

Branham's testimony at the hearing consisted, in part, of these questions and answers:

Q. Do you recall when you received the appointment of this Court to represent the interests of employees of the Metro Turstee's Office in May of 1980?

A. Yes.

....

Q. Were all of your services encompassed in those hours which you have recited, and were all of the expenses which you have incurred reasonably required to protect the interests of those employees who sought your representation pursuant to the Court's order?

A. Yes.

The second sentence in the chancellor's memorandum opinion, ruling on Branham's motion for a fee, reads as follows:

The Court appointed Mr. Branham counsel for the employees in the Trustee's Office.

Later in the opinion the chancellor wrote:

On May 21, 1980, the day before the first employee deposition was scheduled

to be taken, this Court held an emergency hearing. The Court denied the relief requested in the motion for a protective order. After further considering the matter, the Court concluded that counsel should be appointed to represent the employees.... When the Court announced that the depositions would be postponed and that an attorney would be appointed for the employees, counsel for Mr. Ferguson and Mr. Paycheck agreed that this was an appropriate move; an "excellent idea," Mr. Ferguson's lawyer remarked.

The chancellor described the services rendered by Branham as follows:

Mr. Branham then undertook to represent the employees and did so in a most thorough and capable manner. He met with the employees individually, accompanied them to depositions, and filed motions for their protection. He appeared at several of the many hearings relating to discovery. The complexity of the suit and the large number of employee deponents required an extraordinary amount of Mr. Branham's time. After Mr. Branham's appointment this Court disposed of nineteen of the forty-one pre-trial motions.

The sentence reciting that the court disposed of nineteen pre-trial motions after Branham's appointment sheds no light whatever on the question of whether Branham rendered necessary services to the court beneficial to solutions of issues presented in this litigation. None of the other services recited could be regarded as service to the court in reaching resolution of issues.

Until this case reached the appellate courts, no reference whatever was made to Branham as an amicus curiae, nor was it asserted in testimony or advocacy that his role was as a friend of the court or that his primary duty involved service to the court in the necessary resolution of questions or issues.

■ Upon this record, we are compelled to hold that Branham was appointed to represent the employees of the Metropolitan Trustee's Office and that there was no evidence presented in the trial court from which this Court could conclude that the appointment was made for the purpose of rendering a necessary service to the chancellor beneficial to the solution of questions or issues presented in this litigation. Thus the chancellor did not have the authority to appoint counsel and did not have authority to award compensation as part of the costs taxed to the litigants.

The judgment of the Court of Appeals reversing the award of compensation to appointed counsel is affirmed. Costs are adjudged against Branham.

COOPER, BROCK and HARBISON, JJ., concur.

DROWOTA, J., concurs in part, dissents in part.

DROWOTA, Justice, concurring in part; dissenting in part.

The majority opinion begins by stating that "the chancellor appointed John P. Branham, a member of the Nashville bar, during the discovery stage and assigned him duties which he performed and sought compensation therefor." The majority opinion then frames the determinative issue as follows: "the decisive question was whether the purpose of Branham's appointment was (1) to represent the interests and concerns of employees of the Trustee's Office or (2) to perform necessary services to the court in controlling potential abuse of the discovery process." If Mr. Branham was appointed for the purpose of representing witnesses, then the majority opinion concludes that "the law does not authorize appointment or compensation for that purpose."

The majority opinion adopted the following rule concerning the appointment of counsel:

"[t]here must exist a necessity for the services of a member of the bar to serve the court in reaching a proper resolution of questions or issues presented and pending before the court, in which case the court may award compensation to be

paid by the party or parties responsible for the situation that prompted the court to make the appointment. The rule excludes the appointment of counsel to serve the interests of litigants, witnesses, or any other private parties."

I am in total agreement with the majority's statement of the law. I also agree with the majority's conclusion that "Branham was appointed to represent the employees of the Metropolitan Trustee's Office." However, in making the appointment the chancellor not only appointed Mr. Branham to represent the employees of the Trustee's Office but also to perform necessary services for the court in controlling potential abuse of the discovery process, for which services he is entitled to be compensated.

On May 16 and 20, 1980, notices of depositions and subpoenas were issued for sixteen employees of the Trustee's Office. On May 21, 1980, counsel for Mr. Paycheck filed a motion for protective orders. The motion was supported by three affidavits, under seal, purporting to be from employees. The motion recited that the three proposed witnesses were embarrassed and afraid. At the hearing on the motion for protective orders, the chancellor deferred action, and then, by order of May 21, announced his intentions to appoint an attorney "to represent said employees and *report back to the court.*" The order concluded by stating that until such time as the appointed attorney "*has investigated and reported back to the court*" the depositions of the employees shall be continued. On June 23, 1980, the chancellor instructed Mr. Branham to file, for the court's eyes only, an affidavit reporting on his investigation. This Mr. Branham did on June 25. It is clear from this limited record that Mr. Branham was appointed not only to represent the employees in the Trustee's Office, but also to serve and assist the court.

The chancellor's memorandum opinion stated,

"After Mr. Branham's appointment this court disposed of nineteen of the forty-one pre-trial motions. The inability of counsel for Ferguson and Paycheck to agree on routine discovery scheduling and procedures placed further demands on Mr. Branham's time."

Mr. Branham worked with attorneys for plaintiff and defendant in an attempt to resolve discovery disputes. The services rendered by Mr. Branham were consistent with the instructions given him by the chancellor and were of obvious benefit to the court.

As discussed above, Mr. Branham unfortunately cannot receive a fee for representing the employees of the Trustee's Office, for there is no evidence that any employee was mentally or financially unable to procure counsel and there was no legal ground for the chancellor to furnish counsel to these employees. However, Mr. Branham should receive a fee for the services he performed for the court, at the court's request, in controlling potential abuse of the discovery process. The chancellor was faced with having to resolve the plaintiff's and defendants' disputes over discovery procedures. Mr. Branham conducted investigations, reported to the court and aided and assisted the chancellor in the resolution of issues presented. He rendered invaluable services to the court and for this he is entitled to be compensated.

No one knows better than the chancellor himself what necessary services Mr. Branham performed for the court in controlling potential abuse of the discovery process. The chancellor awarded an attorney's fee based on 194.7 hours at seventy-five ($75) dollars per hour. The record before us and before the chancellor failed to give a breakdown on how many hours were spent by Mr. Branham representing the interests of the employees and how many hours were spent performing necessary services for the court. The chancellor did not require such a breakdown, for no such distinction in services performed was raised in the trial court. I would therefore, in the interest of "complete justice" remand this cause to the trial court under the authority of T.C.A. § 27-3-128, for a determination of reasonable attorney's fee due Mr. Branham for the necessary services he performed for

the court, at the direction of the court. Such fee should be taxed one-half to Mr. Ferguson and one-half to Mr. Paycheck.[1]

1. At the hearing on the motion for an award of attorney's fees the chancellor stated "in trying to assess who ought to have to pay the fee ... both parties agree that we should have a court-appointed lawyer."