Stevan L. BLACK, as Amicus Curiae,
Petitioner/Appellant,

v.

James E. BLOUNT, III,
Respondent/Appellee.

Supreme Court of Tennessee,
at Jackson.

Dec. 23, 1996.

Stevan L. Black, Black, Bobango & Morgan, Memphis, for Petitioner/Appellant.

Robert L. Green, Neely, Green, Fargarson, Brooke & Summers, Wilbur Ruleman, Memphis, for Respondent/Appellee.

## OPINION

DROWOTA, Justice.

In this criminal contempt action, Stevan L. Black, appointed by the trial court as *amicus curiae*, appeals from the Court of Appeals' decision that the evidence is insufficient as a matter of law to support the trial court's judgment finding the appellee, James E. Blount, III, guilty of two counts of criminal contempt, and ordering him to pay as costs $5,000 in attorney's fees to Black. After carefully considering the record in this case, we conclude that the Court of Appeals erred, both in finding the evidence insufficient to support the contempt convictions and also in concluding that the trial judge lacked authority to order payment of attorney's fees. Accordingly, we reverse the judgment of the Court of Appeals, reinstate the criminal contempt convictions, and remand to the trial court for calculation of reasonable attorney's fees.

## *BACKGROUND*

Appellee, James E. Blount, III, represented Mr. and Mrs. Jackson in a personal injury action involving the consolidated cases of *Ashford v. Benjamin* and *Jackson v. Benjamin.* Attorney Stuart Breakstone represented the defendants. The trial judge directed a verdict in favor of the Jacksons on the issue of liability and the case was tried to the jury on the issue of damages only. The jury returned a verdict in favor of Mrs. Jackson in the amount of $35,000.

After the jury verdict as to Mrs. Jackson was read, Blount directed a "thumbs down" gesture to the jury and muttered words to the effect that the verdict as to his client was unjust and unfair. Before rendition of all the verdicts and prior to the trial court excusing either the participants or the jurors, Blount exited the courtroom in an abrupt manner. According to one witness, as he exited, Blount "had his hands in the air and . . . said this is a travesty of justice." Blount, however, returned to the courtroom and was present when the jury foreman received his certificate of service.

After the jury was discharged, Breakstone and some of the jurors were conversing in the hallway outside the courtroom when Blount approached and, in a raised voice, angrily expressed his dissatisfaction with the verdict. Blount told the jurors that "he hoped they could live with themselves for what they did, that what they did was a travesty of justice and they must not have been at the same trial that he was . . . because they would have given his clients more money . . . that he hoped that if an accident ever happened like this . . . to them . . . or their family members, that they would have the same damn injuries and the same jury."

When Blount walked away, Breakstone began apologizing to the jurors for Blount's conduct. Overhearing the apology, Blount returned and told Breakstone, "don't you apologize for me. You're the most unethical attorney I know, you defrauded the Court and jury throughout this entire trial and you lied to the Court and jury throughout the trial." While making those statements, Blount was pushing and jabbing Breakstone's shoulder.

Following an in-chambers meeting with both attorneys, which was initiated by Break-

stone, the trial judge entered an order appointing Stevan L. Black as *amicus curiae* to the court "to investigate, initiate and prosecute a contempt citation" against Blount.[1] The petition for criminal contempt alleged that Blount violated Tenn.Code Ann. §§ 29-9-102(1), (2) and (4) (1981 Repl.), which provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice.
>
> (2) The willful misbehavior of any of the officers of said courts, in their official transactions.
>
> * * * * * *
>
> (4) Abuse of, or unlawful interference with, the process or proceedings of the court.

Prior to trial, Blount moved for recusal, relying upon Rule 42(b), Tenn. R.Crim. P,. which provides that unless the defendant consents, a judge is disqualified from presiding at the hearing of a contempt charge that "involves disrespect to or criticism of a judge."

The trial court denied the recusal motion and found Blount guilty of two counts of criminal contempt, based upon Blount's conduct inside the courtroom while the verdicts were being delivered and upon his conduct in the hall outside the courtroom, and explicitly characterized Blount's conduct as "outrageous and willful." On each count Blount was fined $50 and sentenced to serve 10 days in jail. In addition, Blount was ordered to pay costs of the proceeding including attorney's fees to Black in the amount of $5,000.

Blount appealed, contending that the trial court erred by (1) denying his motion to recuse; (2) appointing Black to prosecute the contempt charges; (3) finding him guilty of criminal contempt; and (4) ordering him to pay attorney's fees as part of the costs. The Court of Appeals did not address the first two issues raised, but, instead, found the evidence insufficient as a matter of law to sustain the contempt convictions, reversed the trial court, and dismissed the cause. Citing the principle that attorney's fees are not recoverable in the absence of a statute, contractual provision, or a recognized ground of equity, the Court of Appeals also concluded that the trial court had no authority to order Blount to pay attorney's fees.

Thereafter we granted Black's application for permission to appeal and, for the reasons that follow, now reverse the judgment of the Court of Appeals.

### CONTEMPT

The power of courts to punish contempts can be traced back as far as twelfth century England. *See* Ronald L. Goldfarb, *The Contempt Power* at p. 9 (1963). Contempt was firmly established as a legal concept by the fourteenth century and it was a principle adopted and incorporated into American jurisprudence by the colonists. *Id.* at 19. Therefore, the inherent power of courts to punish contemptuous conduct has long been regarded as essential to the protection and existence of the courts. *State v. Galloway*, 45 Tenn. 326, 331 (1868). Indeed, at common law, the power of courts to punish contempts was vast and undefined. *Id.* at 330. Because unlimited, undefined discretionary power carried with it the potential for abuse, specific statutory provisions were adopted to limit and define the conduct punishable by contempt. *Id.* at 330–34; *In re Hickey*, 149 Tenn. 344, 258 S.W. 417 (1924).

Conduct punishable as contempt in Tennessee now is delineated in Tenn.Code Ann. § 29–9–102 (1980 Repl.) which provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> (1) The willful misbehavior of any person in the presence of the court, or so near

---

1. Prosecution of this contempt proceeding pursuant to Tennessee Rule of Criminal Procedure 42(b) indicates that the trial judge did not directly witness Blount's behavior.

thereto as to obstruct the administration of justice.

(2) The willful misbehavior of any of the officers of said courts, in their official transactions.

(3) The willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said courts.

(4) Abuse of, or unlawful interference with, the process or proceedings of the court.

(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them.

(6) Any other act or omission declared a contempt by law.

 Contempts may be either criminal or civil in nature. Civil contempt occurs when a person refuses or fails to comply with a court order and a contempt action is brought to enforce private rights. *Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 911 (1964). If imprisonment is ordered in a civil contempt case, it is remedial and coercive in character, designed to compel the contemnor to comply with the court's order. Compliance will result in immediate release from prison. Therefore, it has often been said that in a civil contempt case, the contemnor "carries the keys to his prison in his own pocket...." *State ex rel. Anderson v. Daugherty*, 137 Tenn. 125, 127, 191 S.W. 974 (1917) (internal citations and quotations omitted); *see also State v. Turner*, 914 S.W.2d 951, 955 (Tenn. Crim.App.1995).

 Criminal contempts, on the other hand, are intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society. *Daugherty*, 137 Tenn. at 127, 191 S.W. at 974; *Gunn v. Southern Bell Tel. & Tel. Co.*, 201 Tenn. 38, 41–42, 296 S.W.2d 843, 844–45 (1956). Therefore, sanctions for criminal contempt are generally both punitive and unconditional in nature. *Id.* While criminal contempts may arise in the course of private civil litigation, such proceedings, "in a very true sense raise an issue between the public and the accused." *Daugherty*, 191 S.W. at 974 (internal citations and quotations omitted). In the trial of a criminal contempt case, therefore, guilt of the accused must be established by proof beyond a reasonable doubt. *Robinson*, 377 S.W.2d at 912.

 Our review of this case is also influenced by two further classifications of contempt, direct and indirect, which differ, among other ways, in the minimal procedure that will satisfy the requirements of due process in each case. Direct contempt is based upon acts committed in the presence of the court, and may be punished summarily. Indirect contempt is based upon acts not committed in the presence of the court, and may be punished only after the accused has been given notice and an opportunity to respond to the charges at a hearing. *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn.1978) (citing cases).

The procedures governing prosecutions of indirect criminal contempt, such as this case, are outlined in Rule 42(b), Tenn. R.Crim. P. which provides:

A criminal contempt except as provided in subdivision (a) of this rule [direct contempt] shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the hearing except with the defendant's consent. Upon a verdict of finding of guilt the court shall enter an order fixing the punishment.

We apply these general background principles to resolve the specific issues in this appeal.

## A. Sufficiency of the Evidence

In this Court, Black challenges the Court of Appeals' conclusion that the evidence is insufficient to sustain the convictions for criminal contempt. When the sufficiency of the convicting evidence is raised as an issue on appeal, this Court must review the record to determine if the proof adduced at trial supports the findings of the trier of fact of guilt beyond a reasonable doubt. Tenn. R.App. P. 13(e). We do not reweigh the proof. The defendant has the burden of illustrating to this Court why the evidence is insufficient to support the verdict. A guilty verdict removes the presumption of innocence and it is replaced with a presumption of guilt. We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Daugherty,* 137 Tenn. at 127, 191 S.W. at 974; *Creasy,* 885 S.W.2d at 831. Applying that standard to the facts in this case, we conclude that the Court of Appeals erred in holding the evidence insufficient to support Blount's convictions for contempt.

While, to some extent, the trial court relied upon all three statutory grounds charged in finding Blount guilty of contempt, primary reliance was placed upon the first statutory section which allows a finding of contempt for the "willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice." Tenn.Code Ann. § 29–9–102(1) (1981 Repl.). In holding the evidence insufficient to sustain the convictions on that statutory basis, the Court of Appeals interpreted this Court's decision in *Winfree v. State,* 175 Tenn. 427, 135 S.W.2d 454 (1940), to require proof of an actual interruption, hindrance, delay or obstruction of the proceeding from which the charge of willful misbehavior arises. Since Blount's conduct did not disrupt the trial, and indeed, largely transpired following the trial's conclusion, the Court of Appeals found the evidence insufficient to establish that Blount's conduct "obstructed the administration of justice."

Black argues that the Court of Appeals interpreted the *Winfree* decision too narrowly and applied an incorrect legal standard when it evaluated the sufficiency of the evidence. We agree.

In describing conduct constituting contempt, the *Winfree* Court stated that "[t]he most familiar forms of contempt are found in acts which hinder, delay, and obstruct the administration of justice, which are usually committed in the course of the adjudication of some cause or the execution of its judgment." *Id.,* 135 S.W.2d at 455. We do not interpret that statement as a definitive pronouncement intended to narrow the contempt power of the courts to encompass *only* the familiar and usual forms of contemptuous conduct. In fact, the *Winfree* Court acknowledged that "acts constituting contempt cover a wide range." *Id.*

Indeed, criminal contempt of court that obstructs the administration of justice has generally been defined as any willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute. *See generally, Black's Law Dictionary* 319 (6th ed. 1990); *see also People v. Javaras,* 51 Ill.2d 296, 281 N.E.2d 670 (1972); *Hirschfeld v. Superior Court,* 184 Ariz. 208, 908 P.2d 22 (App.1995). Courts applying that definition have found misconduct similar to that displayed by Blount contemptuous under statutes either identical or very similar to the statute at issue in this case.

For example, in *Tanner v. United States,* 62 F.2d 601 (10th Cir.1932), following a jury trial in a civil case, Tanner, an attorney who represented a party in the suit, encountered a juror who had served in the trial and "proceed to abuse" the juror because of the small amount of damages awarded his client. *Id.* The juror complained to the court, and Tanner was tried under a statute which allowed courts to punish as contempt "the misbehavior of any person in their presence, [courts], or so near thereto as to obstruct the administration of justice, the misbehavior of any of the officers of said courts in their official transactions, and the disobedience or

resistance by any such officer, or by any party, juror, witness, or other person to any lawful writ, process, order, rule, decree, or command of the said courts." *Id.* at 602. Tanner was convicted of criminal contempt. On appeal he argued that since the case in which the juror had served was concluded when the incident occurred, he was not subject to punishment for contempt under the statute. The Tenth Circuit strongly rejected Tanner's argument

> While the jury had returned a verdict in the Woody Case in which the juror had sat, he was still an officer of the court and would be called in subsequent cases. Appellant also was an officer of the court. The attack having been made by one officer of the court upon another because of the subject-matter of a trial concluded only so far as the return of a verdict by the jury, we are of the opinion while the attack was made outside of the courtroom and after the jury had returned its verdict, yet the case was still pending, and it was not only the right but the duty of the court to deal with the same. It is unthinkable a court should be so weak or supine, so wanting in constitutional power, as to not be able to protect its officers in the proper discharge of their sworn duty. That a juror, acting under his sworn duty in the administration of justice in one of our national courts, should be so basely accused and humiliated by an interested officer of the court, cannot be thought not to be included in the statutory law above quoted. No doubt jurors, if such conduct as is found in this record should go unpunished, would fear to do their sworn duty in an honest, impartial manner, as must be done in the administration of justice in our courts.

*Id.* at 602.

Likewise, in *Hirschfeld* the Arizona Court of Appeals refused to accept the argument that a court may not punish an attorney by contempt when the misconduct does not occur in the course of a proceeding. There Hirschfeld, an attorney representing the father in a child custody proceeding followed the mother around the courthouse after a meeting in the judge's chambers demanding

to know the location of the child and instructing a deputy to arrest her for custodial interference. The trial judge cited Hirschfeld for contempt of court, and following a hearing before a different judge, Hirschfeld was convicted of engaging in "willfully contumacious conduct which obstructs the administration of justice, or which lessens the dignity and authority of the court." 908 P.2d at 25. Hirschfeld challenged the conviction on appeal on the basis that his conduct did not occur during a trial proceeding. In rejecting that argument, the Arizona court stated:

> We conclude that such behavior is a contempt of court for the very reason expressed by the trial judge—that the court has the right and the duty to protect litigants, witnesses, attorneys and jurors from misbehavior and harassment while they are in or near the courtroom, whether they are arriving, waiting, or departing. Conduct like Hirschfeld's, because it impinges on that right and duty, lessens the dignity and authority of the court.

*Id.* 908 P.2d at 25–26.

The court in *Hirschfeld,* relied upon *United States v. Patterson,* 26 F. 509 (W.D.Tenn. 1886) as support for its holding. There, a man named Patterson, believed that a lawyer had insulted his father. Patterson went to the courthouse where the lawyer was trying a case, waited until court adjourned, entered the courtroom, and struck the lawyer with his hand. When the incident occurred, the judge had left the bench but was still in the courtroom, although Patterson did not realize that at the time he acted. Patterson was cited for contempt and defended on the grounds that he had intended no contempt, having waited until he believed the judge had left the room. *Id.* at 511. Rejecting Patterson's defense on two separate and distinct grounds, the court first stated that the "court would deserve the contempt of public opinion if it permitted so narrow a view of its prerogatives to prevail, and could not complain, if, during its recess, the courtroom should be used for a cock-pit or a convenient place to erect a prize ring." *Id.* Moreover, the *Patterson* court emphasized that courts have the authority and the duty to protect "all who are engaged in and about the proceedings of

the court...." *Id.* This rule, according to the court, protects parties, jurors, witnesses and officers of the court, and anyone else engaged in and about the business of the court. *Id.* Without such a rule, "attorneys might be driven from court, or deterred from coming to it, or be held in bodily fear while in attendance, and thereby the administration of justice be obstructed." *Id.*

While some courts have accepted the proposition that only conduct which actually interferes with a pending proceeding is punishable as contempt which "obstructs the administration of justice,"[2] we agree with the cases above discussed that such a limited interpretation of the phrase "administration of justice" is both unwarranted and unwise. As the *Tanner* court recognized "[i]t is unthinkable a court should be so weak or supine, so wanting in constitutional power, as to not be able to protect its officers in the proper discharge of their sworn duty." 62 F.2d at 602.

Therefore, we explicitly hold that criminal contempt of court which obstructs the administration of justice includes all willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute. We also emphasize that disrespectful conduct by an attorney has a greater impact upon the dignity of a court than does disrespectful conduct of a lay person. Public respect for the law derives in large measure from the image which the administration of justice presents. Lawyers play an integral role in the administration of justice and, as such, their conduct can have a great influence upon the extent to which the proceedings are perceived as fair and dignified by jurors, defendants, witnesses, and spectators. Accordingly, a lawyer's allegations of inequity and unfairness are uniquely denigrating to the dignity of the proceedings. *See generally Matter of Campolongo,* 495 Pa. 627, 435 A.2d 581 (1981).

■ Applying these standards to the facts of this case, we find the evidence suffi-

cient to support the trial court's finding that Blount's gestures and comments to the jury as the verdicts were being read and his comments and conduct outside the courtroom toward the jurors and opposing counsel, constitute willful misbehavior so near to the presence of the court that it obstructs the administration of justice. Accordingly, the judgment of the Court of Appeals is reversed, and the trial court's judgment finding Blount guilty of two counts of contempt is reinstated.

## B. Disqualification and Recusal

■ In the Court of Appeals, Blount argued that the trial judge was disqualified from presiding by Rule 42(b), Tenn. R.Crim. P., and should have recused himself because the contempt charges involved "disrespect to or criticism of a judge." Because of its disposition of the case, the Court of Appeals did not address that issue. Though it is not pressed in this Court, it is a threshold matter which must be resolved since we have reversed the intermediate court's finding of insufficient evidence.

■ The contempt charged in this case does not, on its face, involve disrespect or criticism of the trial judge. In *Taylor v. Hayes,* 418 U.S. 488, 501, 94 S.Ct. 2697, 2704, 41 L.Ed.2d 897 (1974), however, the United States Supreme Court recognized that conduct short of a personal attack may still provoke a trial judge and so embroil him or her in controversy that it would be difficult to maintain the calm detachment necessary for fair adjudication. *State v. Green,* 708 S.W.2d 424, 426–27 (Tenn.Crim.App.1986). In determining whether contempt charges should have been heard by a judge other than the one who initiated the proceeding, the appropriate question is not only whether there was actual bias on the judge's part, but also whether there was such a likelihood of bias, or an appearance of bias, that the judge was unable to hold the balance between vindicating the interest of the court and the interest of the accused. *Taylor,* 418 U.S. at

---

**2.** *See e.g. Castellio v. State,* 143 Ga.App. 386, 238 S.E.2d 746 (1977)(Holding that defendant's conduct could not have obstructed or impaired the administration of justice because "the trial had terminated and the jury had been discharged.")

501, 94 S.Ct. at 2704; *Green,* 708 S.W.2d at 427.

Utilizing that inquiry, it is clear that in this case the trial judge was not disqualified under Rule 42(b), Tenn. R.Crim. P. The trial judge directed a verdict in favor of Blount's clients on the issue of liability. Moreover, Blount's angry comments and conduct were entirely directed toward the jury and opposing counsel, not the trial judge. This record is devoid of evidence of actual or potential bias. The trial judge did not err by denying Blount's recusal motion.

### C. Appointment and Compensation of Counsel

Blount asserted for the first time in the Court of Appeals that the trial court erred by appointing Black as *amicus curiae.* He repeats that argument in this Court and says that once notice is given pursuant to Rule 42(b), Tenn. R.Crim. P., actual prosecution of contempt charges may be conducted only by the district attorney general. In Tennessee, Blount says, district attorney generals have a duty "to attend the circuit courts in the district, and every other court therein having criminal jurisdiction, and prosecute on behalf of the state in every case in which the state is a party, or in any wise interested." Tenn. Code Ann. § 8–7–103(1) (1993 Repl. & 1996 Supp.). Therefore, Blount argues that the district attorney general was legally required to conduct the prosecution of this criminal contempt proceeding and the trial court erred by appointing a private attorney.

▆▆▆▆ While we agree that criminal contempt is generally regarded as a crime, *see Bloom v. Illinois,* 391 U.S. 194, 201, 88 S.Ct. 1477, 1481–82, 20 L.Ed.2d 522 (1968), prosecutions of criminal contempt

> are not intended to punish conduct proscribed as harmful by the general criminal laws. Rather, they are designed to serve the limited purpose of vindicating the authority of the court. In punishing contempt, the Judiciary is sanctioning conduct

that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings.

*Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 800, 107 S.Ct. 2124, 2134, 95 L.Ed.2d 740 (1987). In our view, Tennessee law only *requires* district attorney generals to conduct prosecutions for "conduct proscribed as harmful by the general criminal laws." Therefore, district attorney generals in Tennessee have no mandatory statutory duty to prosecute criminal contempts. *See* Tenn. Op. Atty. Gen. No. 92–25.

Blount's argument ignores the fact that the contempt power of the court is essential to the survival of an independent judiciary. Indeed, to hold that a trial judge may appoint only the district attorney general to investigate and prosecute contempts places the court at the mercy of another constitutional officer who is a member of another independent branch of government. *See Dearborne v. State,* 575 S.W.2d 259, 264 (Tenn.1978) (district attorney general is a member of the executive branch of government). The ability to appoint a private attorney to prosecute a contempt action satisfies the need of the court for an independent means of protecting the administration of justice and the court as an organ of society. *Young,* 481 U.S. at 796, 107 S.Ct. at 2132.[3]

Moreover, Rule 42(b), Tenn. R.Crim. P., clearly indicates that a trial court may appoint an attorney other than the district attorney general to prosecute indirect criminal contempts. ("The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the district attorney general *or of an attorney appointed by the court for that purpose,* by an order to show cause or an order of arrest") (emphasis added). Though the rule does not provide specific authorization for appointment of a private attorney, it acknowledges the well-settled proposition that courts possess inherent authority to initiate contempt proceedings and the concomitant authority to

---

**3.** The United States Supreme Court in *Young* also held that an attorney representing a party in a legal proceeding from which contempt charges arise may not be appointed to prosecute the contempt charges. Black did not represent any of the parties in the action from which these contempt charges arose. Therefore, we reserve decision on that issue for a case in which it is squarely presented.

appoint private attorneys to prosecute such contempts. *Young,* 481 U.S. at 794–95 107 S.Ct. at 2130–31.

Having concluded that district attorney generals have no mandatory statutory duty to prosecute criminal contempts, we emphasize that they are not *prohibited* from prosecuting such cases. Indeed, we agree with the United States Supreme Court that the better practice is for a trial court to first ask the district attorney to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied. *Young,* 481 U.S. at 801, 107 S.Ct. at 2134, 95 L.Ed.2d at 755; *see also* Tenn. Op. Atty. Gen. No. 92–25.

Blount speculates that had the trial court in this case first asked the district attorney to prosecute the contempt action, payment of attorney's fees would not be an issue since the district attorney is not entitled to receive attorney's fees in such cases. *See* Tenn.Code Ann. § 40–25–105 (1990 Repl.)("No prosecutor in a misdemeanor is entitled to any compensation for his services as prosecutor, or for his attendance as a witness on behalf of the state.") Blount says he should not be required to pay attorney's fees that were incurred as a result of the trial court's mistake. In the alternative Blount argues that Tenn.Code Ann. § 29–9–103 (1980 Repl. & 1996 Supp.) [4], delineates the exclusive punishment for contempt and does not include ordering payment of attorney's fees. Therefore, Blount says the trial court was without authority to order payment of attorney's fees under general Tennessee law which allows taxing of attorney's fees only when authorized by statute, contract or a recognized ground of equity.

 Under Tennessee law, issues raised for the first time on appeal are waived. Blount first challenged the trial court's decision to appoint Black in the Court of Ap-

peals. Blount may not now use his own failure to act to obtain a more favorable decision on appeal.

 Blount's second argument ignores this Court's decision in *Ferguson v. Paycheck,* 672 S.W.2d 746 (Tenn.1984), in which the following rule concerning a trial court's authority to appoint and order compensation of counsel was adopted:

> [t]here must exist a necessity for the services of a member of the bar to serve the court in reaching a proper resolution of questions or issues presented and pending before the court, in which case the court may award compensation to be paid by the party or parties responsible for the situation that prompted the court to make the appointment. The rule excludes the appointment of counsel to serve the interests of litigants, witnesses, or any other private parties.

In this case, the trial court appointed Black to "investigate, initiate, and prosecute a contempt citation" against Blount. Unlike the attorney in *Ferguson,* who had been appointed to represent certain witnesses, Black was appointed to perform necessary services for the trial court. Black assisted the trial court in properly resolving questions and issues presented by the contempt proceeding. Since Blount is the party responsible for creating the situation which prompted Black's appointment, based on this Court's decision in *Ferguson,* the trial court was authorized to order Blount to pay attorney's fees.[5]

Blount claims that Black's services were not necessary because the district attorney general was available to prosecute the action. As previously explained, any challenge to Black's appointment on that basis should have been raised in the trial court and has been waived.

---

**4.** That statute provides as follows:

(a) The punishment for contempt may be by fine or by imprisonment, or both.
(b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29–9–108, all

other courts are limited to a fine of ten dollars ($10.00).

**5.** Because we conclude that attorney's fees are recoverable in this case under *Ferguson,* we need not decide whether Tenn.Code Ann. §§ 40–25–104 (1990 Repl.) and 29–9–103 (1980 Repl. & 1996 Supp.) allow taxing of attorney's fees as costs in criminal contempt proceedings.

■ Although we affirm the trial court's decision to order Blount to pay attorney's fees, we note that there is little evidence in this record to establish the reasonableness of the fees awarded. Therefore, in the interest of justice, we remand to the trial court for further proceedings to calculate reasonable attorney's fees in accordance with *Connors v. Connors,* 594 S.W.2d 672 (Tenn.1980 ), and Disciplinary Rule 2–106 of the Code of Professional Responsibility which is a part of Supreme Court Rule 8. One of the factors relevant to that determination is the fee customarily charged in the locality for similar legal services. *Connors,* 594 S.W.2d at 676. The trial court shall consider the fees paid to court-appointed counsel in other contexts when applying that factor to determine reasonable attorney's fees for the services rendered by Black in this case.

### CONCLUSION

After carefully considering the record in this case, we have determined that the Court of Appeals erred, both in finding the evidence insufficient to support the contempt convictions and also in concluding that the trial judge lacked authority to order payment of attorney's fees. We reverse the judgment of the Court of Appeals, reinstate the criminal contempt convictions, and remand to the trial court for calculation of reasonable attorney's fees. Costs of this appeal are taxed to the appellee, James E. Blount, III, for which execution may issue if necessary.

BIRCH, C.J., and ANDERSON and REID, JJ., concur.