KATHY L. MOYERS,                    )
                                    )
        Petitioner/Appellee,        )
                                    )        Appeal No.
                                    )        01-A-01-9612-CV-00556
VS.                                 )
                                    )        Davidson Circuit
                                    )        No. 93D-2020
ROALD A. MOYERS,                    )
                                    )
        Respondent/Appellant.       )

**FILED**

**July 2, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE

RAMSEY B. LEATHERS, JR.
BLACKBURN, SLOBEY, FREEMAN & HAPPELL, P.C.
414 Union Street
2050 NationsBank Plaza
Nashville, Tennessee 37219-0693
        Attorney for Petitioner/Appellee

ROY A. MILES, JR.
First American Center, Suite 1215
Nashville, Tennessee 37238-1215
        Attorney for Respondent/Appellant

JOHN KNOX WALKUP
Attorney General & Reporter

KAREN M. YACUZZO
Assistant Attorney General
450 James Robertson Parkway
Nashville, Tennessee 37243-0493
        Attorney for the State of Tennessee

AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
LEWIS, J.
KOCH, J.

# O P I N I O N

This appeal followed a long course of post-divorce litigation that prevented the parties from enjoying the peace that should have come from the dissolution of their unhappy marriage. The trial court found the husband guilty of five counts of criminal contempt for failing to comply with the court's orders regarding division of marital property and payment of alimony in solido, and ordered him to serve ten days in jail for each count. On appeal we reverse the trial court as to four of the five counts.

## I.

Roald Moyers and Kathy Moyers were divorced by a final decree of the Davidson County Circuit Court on June 15, 1994. The decree divided the marital property and ordered the husband to take sole responsibility for the payment of certain marital debts as alimony in solido, and to hold the wife harmless for those debts.

He was also ordered to pay the wife rehabilitative alimony for two years. The decree included a finding that both parties were guilty of willful criminal contempt for failing to abide by previously issued restraining orders, and they were sentenced to take a tour of the Metro Jail.

The wife filed several post-divorce petitions for contempt against her former husband. This case arose out of an amended petition, filed on April 26, 1996, in which she asked the court to find him in criminal and civil contempt for failing to comply with the court's order to pay off five separate obligations. She signed the pleading with the name Kathy L. Moyers Flaherty, and we will henceforth refer to her

as Ms. Flaherty or as petitioner. Her former husband is a chiropractor, and we will refer to him as Dr. Moyers or as respondent.

Respondent's attorney subsequently filed several motions. His Motion to Recuse was based on Dr. Moyers' objections to colloquy at an earlier hearing, where the trial judge advised Ms. Flaherty's attorney to amend the Petition for Contempt to allege criminal contempt, because it was unlikely that the court could imprison him for civil contempt. The respondent felt that the giving of such advice was improper and gave the appearance of partiality.

Another motion was captioned Motion to Disqualify Private Counsel from Criminal Prosecution. The respondent argued that allowing Ms. Flaherty's attorney to prosecute the contempt was inconsistent with the directives of the United States Supreme Court in the case of *Young v. U.S.*, 481 U.S. 787, 107 S.Ct. 2124, L.Ed.2d 740 (1987) and of Tenn. Code Ann. § 8-7-103, which sets out the duties of District Attorneys General.

The Motion to Require Petitioner to Proceed on Civil or Criminal Contempt asked the court to order the petitioner to elect the theory under which she would be proceeding, in order that the respondent's attorney might properly prepare for trial.

The case was heard on May 9, 1996. The trial court orally denied the Motion to Recuse and the Motion to Disqualify Private Counsel. The petitioner's attorney stated that if he was required to make an election, he would elect to proceed on the criminal contempt. The respondent and the petitioner were the only two witnesses called. Dr. Moyers admitted that he did not make the required payments, but claimed that he was financially unable to do so. Ms. Flaherty testified to a telephone conversation in which Dr. Moyers allegedly told her that he had no intention

of complying with the order of the court, and made insulting references both to her and to the judge.

The judge found the respondent to be guilty of five counts of willful criminal contempt for failing to pay on each of the five obligations, and he was sentenced to ten days in the Metro jail for each offense, the sentences to be served consecutively. The judge also awarded the petitioner judgments on four of the obligations,[1] totaling $11,078.42, and $1,500 in attorney fees, and placed a lien on the respondent's office equipment and furniture to secure payment. This appeal followed.

## II.

After filing his notice of appeal, the respondent's attorney filed copies of the notice on the Tennessee Attorney General and on the Davidson County District Attorney, in accordance with Tenn. R. App. P. 5(b), which requires such notice in appeals of criminal actions. The Attorney General filed a brief on behalf of the State, which vigorously defended the trial judge's exercise of her discretion in refusing to recuse herself, and in denying Dr. Moyers' motion to disqualify Ms. Flaherty's private counsel from prosecuting the contempts.

The respondent argues that the trial judge erred in not granting his motion that she recuse herself. As we discussed earlier, he alleged that at an earlier proceeding the judge offered legal advice to Ms. Flaherty from the bench, advising her to proceed on criminal contempt rather than civil contempt if she wanted to see her former husband go to jail.

---

[1] The one debt that was not reduced to judgment was a tax obligation to the State of California. The testimony as to that obligation was confusing, and the amount of the obligation appears to be uncertain.

There is no transcript in the record of the proceeding where that advice was allegedly given. We only have the arguments of counsel and the allegations in pleadings to go on, and these do not constitute evidence. Even if we were to concede the accuracy of the respondent's account of the judge's words, this would still not necessarily require recusal, absent a more complete record of the proceedings to reveal the circumstances and the context in which those words were uttered.

Dr. Moyers also argues that the trial court should have granted his motion to disqualify the wife's attorney from prosecuting this action. He relies on an opinion of the United States Supreme Court, *Young v. U.S.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) in which the High Court ruled that ". . . counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a contempt action alleging a violation of that order." 481 U.S. at 809, 107 S.Ct at 2138, 95 L.Ed. 2d at 759.

The rule of *Young v. U.S.* is based upon the Supreme Court's supervisory authority over the federal courts, rather than upon the court's power to interpret the U.S. Constitution and federal statutes. It is therefore not binding on Tennessee State Courts. See the unreported case of *Woodside v. Woodside,* Appeal No. 01-A-01-9503-PB00121, filed Nashville, October 25, 1995 (Koch, J. concurring in a separate opinion). However our Supreme Court appears to have similar reservations about the dangers of using interested attorneys to prosecute contempts. While not adopting the rule of *Young v. U.S.* the Court said in the recent case of *Black v. Blount*, 938 S.W.2d 394 (1996):

> ". . . we agree with the United States Supreme Court that the better practice is for a trial court to first ask the district attorney to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied."

938 S.W.2d at 403.

We believe, however, that in the present case even if it was error for the trial court not to ask for a public prosecutor before allowing Ms. Flaherty's attorney to prosecute the contempt, the error was harmless because it did not affect the outcome. As the State pointed out, the petitioner's attorney was not granted permission to conduct his own investigation or given broad prosecutorial powers (unlike the attorney in the *Young* case). His role was limited to questioning the parties during the hearing. It is hard to see how the appointment of a different attorney to prosecute this case would have altered the result.

**III.**

Though we have found no plain error in the trial court's refusal to grant the respondent's motions, we must reverse four out of the five judgments of contempt, because we do not believe the trial court applied the correct standard of proof in reaching its decision on those counts.

In order to find a party guilty of criminal contempt, the defendant's guilt must be established beyond a reasonable doubt. See *Strunk v. Lewis Coal Company*, 547 S.W.2d 252 (Tenn. Crim. App. 1976). Where the contempt arises from failure to make a court-ordered payment, the court must find beyond a reasonable doubt not only that the defendant failed to make the required payment, but also that he had the ability to pay. Dr. Moyers admitted that he did not pay the debts that he was ordered to, but he claimed that he was unable to pay.

The proof showed that Dr. Moyers had been a Doctor of Chiropractic for twenty-five years, and that he had previously practiced in California. He testified extensively about his current practice, which he established in Nolensville in 1992. He stated that in the year of the divorce (1994) his practice grossed $32,000, and that after his business expenses were subtracted from that sum, he was left with a net

income of "somewhere around $8,000." He was apparently pinning his hopes for the success of his new practice on the extension of sewage services to Nolensville and the population growth that would presumably bring.

In 1995, Dr. Moyers filed for bankruptcy. Ms. Flaherty successfully petitioned the Bankruptcy Court to declare his obligations to her to be non-dischargeable.[2]

The petitioner testified that she had helped her former husband establish his practice, and helped him run the business when they were still together. The respondent's attorney questioned her about his income:

Q.  What was his income?

A.  You're asking net or gross?

Q.  What he had access to, yes, ma'am, net.

A.  Every month that business was growing, every month. And I believe in December of that last year I was with him, we were making eight grand a month.

Q.  Is that what you could take out of the business or was that your total intake?

A.  Being as it was a new business that was the intake.

Q.  Okay. So out of that 8,000 per month how much could you spend for personal needs?

A.  Sir, I don't remember.

Q.  Do you remember any other months?

A.  No. There is bad things that one tries to block out.

This was the extent of Ms. Flaherty's testimony as to the respondent's income and expenses.

---

[2]Those obligations included a debt of $6,992.52 owed to the Internal Revenue Service, which would have been non-dischargeable in any case.

The parties also disputed the disposition of some property that had been divided in the final decree. Dr. Moyers testified that he had sold his gun collection, and part of an art collection that the parties had been ordered to divide equally, and that he had used the proceeds to live on. A prior order of the court indicates that he had claimed that the art collection had been stolen, and the court at that time ordered him to pay the petitioner $957.50, representing the value of one-half of the collection.

Dr. Moyers also claimed that a box of diamond jewelry he owned had been stolen, and that the wife had probably taken it. The wife claimed that the husband still had the jewelry, and that he had perjured himself in bankruptcy court by not declaring it.

At the conclusion of the proof, the court stated:

> "Having heard the evidence presented I find that Dr. Moyers is in willful criminal contempt of the orders of this court. He's had the ability to pay these debts from day one, but he set upon a course to disobey the order and defeat the interest of the former wife. That's his pattern throughout all of these various contempt proceedings we've had since the day of the final decree."

**IV.**

The standard for appellate review of this case is found in Rule 13(e) Tenn. R. App. P.:

> **Findings of Guilt in Criminal Actions.--** Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt.

The reviewing court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to

find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, 639 S.W.2d 913,914 (Tenn. 1982); *State v. Creasy*, 885 S.W.2d 829, 831 (Tenn. Cr. App. 1994).

After reviewing the record, we cannot say that the facts in evidence are sufficient to prove that Dr. Moyers had the financial ability to satisfy the debts he was ordered to pay, or to sustain a finding that he was guilty beyond a reasonable doubt of the contempts relating to those debts. We do find, however, sufficient evidence from which we can conclude that his sale of the art collection provided a fund from which he could have paid the obligation related to that collection, at least in part.

The appellant argues that he was not obligated to pay the $957.50. He contends that the trial court cannot modify an order that has become final, that the decree ordering him to divide the art collection with his wife became final after thirty days, and that the subsequent order modifying the obligation was issued after the earlier one became final. But even if, *arguendo*, we concede this point, we would still be left with the fact that he did not give the wife her share of the collection when it was still in his possession, and that part of it remained in his possession even after he claimed that it had all been stolen. He clearly had the ability to perform in accordance with the orders of the court, but he chose not to do so.

We affirm the judgment of contempt for the husband's failure to honor his obligations under the property settlement. Our dismissal of the other counts does not, of course, affect the validity of the judgments assessed against Dr. Moyers, or the lien placed upon his assets.

**V.**

The judgment of the trial court is reversed in part and affirmed in part. Remand this cause to the Circuit Court of Davidson County for further proceedings

consistent with this opinion.  Tax the costs on appeal equally between the appellant

and the appellee.

_____
BEN H. CANTRELL, JUDGE


CONCUR:


_____
SAMUEL L. LEWIS, JUDGE


_____
WILLIAM C. KOCH, JR., JUDGE