IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2003 Session

**IN THE MATTER OF K.J.K.**

**Appeal from the Juvenile Court for Franklin County**
**No. J00221      Floyd Don Davis, Judge**

**No. M2002-02039-COA-R3-JV - Filed July 2, 2003**

In this unusual appeal, the State seeks review of the trial court's Order granting the appellee Mother's Petition for Contempt. We reverse the trial court's finding of criminal contempt and award of visitation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Reversed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Paul G. Summers, Attorney General & Reporter; Douglas Earl Dimond, Assistant Attorney General, for the appellant, State of Tennessee, Department of Children's Services.

Glen A. Isbell, Winchester, Tennessee, for the appellee, A.K.

**OPINION**

On December 16, 1999, A. K. gave birth to the child who is the subject of this action, K.J.K. Shortly after the child was born Ms. K. left her with a friend. On January 19, 2000, the State of Tennessee, Department of Children's Services (DCS) filed its Petition for Temporary Custody asserting that the actions of the Mother constituted neglect and that the child should be found dependent and neglected. The Juvenile Court found K.J.K. to be dependent and neglected on January 25, 2000.[1] On April 19, the Juvenile Court allowed visitation to A. K. for one hour every Monday and Wednesday. This visitation was to be supervised by DCS personnel. On January 18, 2002, DCS filed a petition to suspend visitation alleging its concern that both the putative Father and Ms. K. might be infected with hepatitus C. The Department alleged that A. K. had open sores on her body and mouth, and would encourage K.J.K. to kiss her during visitation. The Department also asserted that A. K. provided this information and stated that she might have contracted the disease

---

[1] This Order was entered March 16, 2000 *nunc pro tunc*, January 25, 2000.

from her husband. The Motion was not accompanied by any affidavit nor did it contain in its body any request for an expedited hearing. On January 25, 2002, while the Motion to Suspend Visitation was pending, and without the benefit of any order from the court temporarily altering the visitation schedule, DCS unilaterally suspended visitation with the Mother.

In response to this unilateral action by the Department, Ms. K. filed her Petition for Contempt in the trial court. On February 13, 2002, the Juvenile Court heard Ms. K.'s Petition. In that hearing, the court stated the following:

> THE COURT: We will continue this hearing to March 6th at 1:00 and in the meantime they are going to get tested for hepatitis C at DCS's expense. We will hold an evayance for the petition for contempt of court. [sic] And everybody understands the ten for one rule? Does anyone not understand what the ten for one rule is?
> MS. SONGER: I'm not familiar with that.
> THE COURT: Anybody who withholds visitation under any circumstance, there's a ten for one make-up penalty. For every day there's ten days for one. I think that's been the rule in General Sessions Court for four years now. That stops a lot of visitation problems.
> MS. BUCK: And you're telling that's from today forward.
> THE COURT: No. I'm telling you that if I find y'all withheld visitation without a court order it's ten days for each day the missed visitation.

Consistent with the court's order from the bench, DCS reported on March 6 that G. K., the Father tested positive for the hepatitis C antibody, but A. K. testified negative. The court heard further arguments from counsel. Upon their agreement that Ms. K. had missed eleven hours of visitation at one hour per day as the result of DCS's action, the court ordered resumption of visitation and apparently under the "10-for-1 rule,"[2] ordered 110 days of consecutive unsupervised visitation. Pursuant to a Motion for Relief filed by the Department, the court clarified this Order by filing a Written Order dated July 29, 2002. The Department filed its Notice of Appeal on August 21, 2002, challenging this Order as an inappropriate exercise of the Juvenile Court's authority.

The discretionary nature of the trial court's authority in determining and dealing with contempt is a well settled proposition in this jurisdiction. *See Hawk v. Hawk*, 855 S.W.2d 573, 583 (Tenn. 1993); *see also Robinson v. Air Draulics Engineering Company, Inc.*, 214 Tenn. 30, 37, 377 S.W.2d 908, 912. However, when the exercise of the trial court's authority amounts to a plain abuse of discretion, this Court is bound to reverse it. The time-honored distinction between civil and criminal contempt separates the exercise of a court's power to compel performance from the reasonable goal of vindicating the court's ability to determine controversies and enforce its judgment by punishing contemnors who flaunt that authority. It is this very punitive nature of the latter which

---

[2] Despite the court's statement from the bench, no portion of the record or arguments of counsel provide written authority or citation to a local rule. The "10-for-1" rule is of dubious origin and a practice of subjecting all visitation problems to a single punitive sanction regardless of the facts of the case invites reversal.

compels not only compliance with the proper criminal procedures such as those provided in Tennessee Rule of Criminal Procedure 42, but also the restrictions placed upon that power by the statutes. It stands to reason that any court exercising this ominous power should not only guarantee procedural due process to a criminal contemnor but also tailor its exercise to correct only that behavior which amounts to the contempt. It is for this reason that the legislature specifically determined that punishment for contempt may be by fine or by imprisonment or by both. *See* Tenn. Code Ann. § 29-9-103; *Black v. Blount*, 938 S.W.2d 394, 397 (Tenn. 1996); *see also Robinson*, 214 Tenn. at 36, 377 S.W.2d at 911.

There is no question in the record before this Court that the Juvenile Court chose to exercise its powers under the "10-for-1 rule" to punish DCS for its unilateral actions. While the motive of the trial court in this admittedly sad exercise of state power on the part of the department is understandable, the punishment is contrary to that punishment provided for by statute, and unfortunately punishes only the most innocent party in this action, the child. It is not logically tailored to address only the behavior constituting contempt. In this respect the net is cast too far. The trial court abused its discretion. The Order of the trial court is vacated. The visitation schedule is restored *status quo ante*, and the Department is strongly cautioned against interfering with the visitation rights of parents without prior court approval, or a proper evidentiary showing of imminent irreversible harm to the child. Punishing the Department of Children's Services is not a proper basis for awarding a windfall to the petitioning party, especially when that windfall may needlessly endanger the primary person before the court - - the innocent child. The cause is remanded to the trial court for further proceedings not inconsistent with this opinion, costs of this action are taxed against the Department.

_____
WILLIAM B. CAIN, JUDGE