IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 14, 2001

## JOSEPH TURLEY v. FRANCIS P. MARINO, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 97C-3189 Walter C. Kurtz, Judge**

---

**No. M2000-01684-COA-R3-CD - Filed August 14, 2001**

---

Appellant, Joseph Turley, was charged with two counts of criminal contempt by the trial court in an order issued May 3, 2000. The trial court appointed a special prosecutor to pursue this matter and appointed the public defender to represent the appellant. The trial on June 15, 2000 resulted in a trial court finding of guilty, after which the appellant was sentenced to 48 hours in jail. Turley appeals, and we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR. J., joined.

Jodie A. Bell, Nashville, Tennessee, for the appellant, Joseph Turley.

Paul G. Summers, Attorney General & Reporter and Jennifer L. Bledsoe, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, (Francis P. Marino and Teresa Goldsberry).

### OPINION

The Tennessee Rules of Appellate Procedure 24(c) statement of the evidence filed by Appellant is not contradicted by the State and, in its entirety, reveals:

On June 15, 2000, appellant, Joseph Turley, was convicted of one count of criminal contempt and sentenced to forty-eight (48) hours in jail.

The contempt proceedings arose from a civil case where appellant was a plaintiff who had sustained injuries in an automobile accident. The appellant was represented by attorney Jack Green. The defendant was Francis Marino; Mr. Marino was represented by attorney Jeffrey Powell. At appellant's contempt trial, Mr. Powell

testified that on May 3, 2000, the morning of appellant's civil jury trial, pretrial motions addressing the admissibility of appellant's prior criminal convictions were heard. During opening statements, the defense called appellant a "bad man" and asked the jury to have "bad men finish last." At the conclusion of appellant's first witness, the trial judge stopped the trial so that counsel for all parties could confer. When court resumed, appellant's attorney announced that all parties had agreed to a nonsuit. The court accepted the nonsuit and instructed the parties to prepare the necessary paperwork. Court then adjourned for the day.

In the courtroom, counsel began discussing preparation of the final documentation. During these discussions, appellant, who appeared upset, walked towards the door to exit the courtroom. Mr. Powell testified that as appellant was leaving the room, he said to his attorney, Mr. Green "I'm a card carrying member of the KKK and I'm not speaking to that nigger lawyer." Mr. Powell is an African-American. Words passed between appellant and Mr. Powell, at which time Mr. Powell told appellant to "keep talking." According to both Mr. Powell and Mr. Marino, appellant then addressed Mr. Marino saying, "as soon as my shoulder is better, I'm going to show you who is afraid." Appellant then left the courtroom.

The conversation was brought to the trial judge's attention. Court officers located appellant and returned him to court. The trial judge informed appellant that he was being charged with two counts of contempt, set a bond of $3,500.00 and scheduled a hearing for May 26, 2000. The judge subsequently appointed attorney John Herbison as special prosecutor. On May 26, 2000, the Office of the Metropolitan Public Defender was appointed to represent appellant and his hearing was rescheduled for June 15, 2000.

On June 15, 2000, appellant's trial on charges of criminal contempt was held. At the beginning of the trial, the prosecutor informed the trial judge that the contempt charges had been modified to one count of criminal contempt that could be proven by alternative theories under T.C.A. sections 29-9-102(1) and 29-9-102(4). After hearing the testimony of Mr. Powell and Mr. Marino, appellant was found guilty of criminal contempt.[2] The trial court findings included that Mr. Powell, an attorney, and Mr. Marino, a litigant, were subjected to harassment and abuse by Mr. Turley, who was also a litigant. The trial court further found that Mr. Turley's "willful behavior was so near to the presence of the court that it obstruct[ed] the administration of justice." A brief sentencing hearing, where appellant testified, was held. Appellant was sentenced to forty-eight (48) hours in jail and was given a report date to serve his sentence.

On June 27, 2000, Appellant's notice of appeal was filed and his sentence was stayed.

Tennessee Code Annotated Section 29-9-102 provides, in part:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;

Tenn. Code Ann. § 29-9-102(2000).

For a layman to utter the words "I'm a card carrying member of the KKK and I'm not speaking to that nigger lawyer" on a public street may be bullet proof under the First Amendment to the Constitution of the United States, but to utter such words in the sanctity of the courtroom to officers of the court who are in the process of preparing documentation that they have been instructed by the court to prepare is a different matter all together. For that same layman, still in the courtroom, to address his opponent in the non-suited civil case with the threatening words "as soon as my shoulder is better, I'm going to show you who is afraid" compounds the problem. It is this conduct by Mr. Turley, after the judge had left the courtroom but while the attorneys and parties were discussing preparation of the documentation that had been required of them by the trial judge, that is the basis on which the trial judge held Mr. Turley to be in criminal contempt.

Appellant relies primarily on *State v. Creasy*, 885 S.W.2d 829 (Tenn.Crim.App. 1994). In that case, the trial judge was out of the courtroom, and the jury was deliberating the case. The defendant attempted to engage the prosecutor, who was still in the courtroom, in conversation telling her to "take your best shot" and calling her a "communist." Even when defense counsel came to counsel's table, the defendant further referred to the prosecutor as a "communist" and a "dictator." The trial judge held the defendant in willful contempt under Tennessee Code Annotated Section 29-9-102 for criminal misbehavior in the presence of the court or so near thereto as to obstruct the administration of justice.

The Court of Criminal Appeals reversed, holding the evidence to be insufficient to support the conviction. The defendant, Creasy, had also been convicted in the criminal proceeding of disorderly conduct in addition to contempt of court. While the Court of Criminal Appeals reversed the contempt charge, it affirmed the conviction of Creasy for disorderly conduct. The opinion of the Court of Criminal Appeals was issued May 5, 1994. The record in the Creasy case shows that the only application to the Supreme Court for permission to appeal was the Rule 11 application of Creasy filed on June 27, 1994. The Supreme Court denied that application on September 19, 1994. Thus, the contempt of court issue was never brought before the Supreme Court of Tennessee.

Barely two years after permission to appeal had been denied in the *Creasy* case, the Supreme Court, on December 23, 1996, released its opinion in *Black v. Blount*, 938 S.W.2d 394 (Tenn. 1996). In this case, the trial court held the attorney for the plaintiff to be in criminal contempt of court, both for his gestures to the jury in court as they announced, what he considered to be, an inadequate verdict, and for his conduct after court had adjourned in berating members of the jury in the hallway as they attempted to leave the courtroom. The Court of Appeals reversed, finding the evidence to be insufficient to support the judgment of the trial court. The court appointed *amicus curiae* prosecuting the contempt filed a Rule 11 application to appeal to the Supreme Court, which application was granted.

In reversing the Court of Appeals and reinstating the judgment of the trial court, the Tennessee Supreme Court traced the history of the contempt power from remote antiquity to the present time. In *Black v. Blount* the Supreme Court makes its only reference to the *Creasy* case in holding:

> We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *Daugherty,* 137 Tenn. at 127, 191 S.W. at 974; *Creasy,* 885 S.W.2d at 831.

*Black*, 938 S.W.2d at 399.

Reference to *Creasy* discloses that the discussion on page 831 of 885 S.W.2d was the portion of the *Creasy* opinion dealing with the disorderly conduct conviction of Creasy on which the Supreme Court had denied an application to appeal. The discussion in *Creasy* of the contempt of court finding does not begin until page 833 of 885 S.W.2d.

The *Black* case, after a careful discussion of the contempt powers of the court, held:

> Applying these standards to the facts of this case, we find the evidence sufficient to support the trial court's finding that Blount's gestures and comments to the jury as the verdicts were being read and his comments and conduct outside the courtroom toward the jurors and opposing counsel, constitute willful misbehavior so near to the presence of the court that it obstructs the administration of justice. Accordingly, the judgment of the Court of Appeals is reversed, and the trial court's judgment finding Blount guilty of two counts of contempt is reinstated.

*Black*, 938 S.W.2d at 401.

Any precedential effect the publication of *Creasy* may have had on the question of contempt of court must yield to the subsequent pronouncements of the Supreme Court of Tennessee in *Black*. Therein, the supreme court held:

-4-

While some courts have accepted the proposition that only conduct which actually interferes with a pending proceeding is punishable as contempt which "obstructs the administration of justice," we agree with the cases above discussed that such a limited interpretation of the phrase "administration of justice" is both unwarranted and unwise. As the *Tanner* court recognized "[i]t is unthinkable a court should be so weak or supine, so wanting in constitutional power, as to not be able to protect its officers in the proper discharge of their sworn duty." 62 F.2d at 602.

Therefore, we explicitly hold that criminal contempt of court which obstructs the administration of justice includes all willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute.

*Id.*

The conduct of Turley occurred so near to the presence of the court ". . . as to obstruct the administration of justice." Tenn. Code Ann. § 29-9-102(1).

Applying the principles set out in *Black*, the trial court correctly held Turley to be in criminal contempt of court; the judgment of the trial court is in all respects affirmed.

Costs of this cause are assessed against the Appellant.

_____
WILLIAM B. CAIN, JUDGE