IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 5, 2004 Session

## STATE OF TENNESSEE, *ex rel*. DONNA J. COTTINGHAM v. WILLIAM B. COTTINGHAM

A Direct Appeal from the Chancery Court for Williamson County
No. 22772    The Honorable R. E. Lee Davies, Chancellor

———————

**No. M2003-00535-COA-R3-CV - Filed October 26, 2004**

———————

This appeal concerns an order of the Williamson County Chancery Court finding William B. Cottingham in criminal contempt of court for failure to pay court-ordered child support and alimony. Mr. Cottingham appeals the order of the chancery court sentencing him to 170 days in jail for failure to comply with court orders concerning child support and alimony. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and HOLLY M. KIRBY, J., joined.

James W. Surprise of Memphis for Appellant, William B. Cottingham

Paul G. Summers, Attorney General and Reporter; Stuart F. Wilson-Patton, Senior Counsel, Office of Attorney General for Appellee, State of Tennessee, ex rel., Donna J. Cottingham

**MEMORANDUM OPINION**[1]

**I. FACTS**

———————

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by Memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

William B. Cottingham and Donna Jean Cottingham were divorced on August 27, 1996 in the chancery court of Williamson County. They had one child, Kristen, who was born on June 10, 1983. On March 5, 1996, while the divorce was pending, the trial court ordered Mr. Cottingham to pay $1,300.00 per month in pendente lite support and found Mr. Cottingham to be in arrears in the amount of $20,592.13 as of March 5, 1996.

In its final decree of divorce, the chancery court set child support at $1,150.00 per month and rehabilitative alimony at $600.00 per month for five years. It appears from the record that, immediately after the decree of divorce, Mr. Cottingham fell even further into arrears. On December 16, 1997 the state, acting on behalf of Donna Cottingham, filed a Petition to Show Cause seeking a determination of willful contempt, a sentence of ten days in jail for each violation of the court's order, and an income assignment requiring Mr. Cottingham's employer to deduct the child support payments from his income. Mr. Cottingham filed a counter-petition asking the court to reduce his child support obligation due to a decrease in his income of greater than 15%.

On March 11, 1998, the court entered an order finding Mr. Cottingham to be $37,742.13 in arrears on his child support obligation and reducing his monthly payment to $728.70 per month. Despite this reduction in his payment, Mr. Cottingham continued to be delinquent in fulfilling his child support and alimony obligations. On May 22, 2002, the state filed a petition for contempt against Mr. Cottingham in which it asked the court to find Mr. Cottingham in criminal contempt and requesting that he be jailed for ten days per violation.[2]

A hearing on the petition for contempt was held on November 18, 2002 in the chancery court of Williamson County. Mr. Cottingham was represented by attorney James W. Surprise at the hearing. On December 11, 2002, the court entered an order finding Mr. Cottingham in criminal contempt of court and sentenced him to 170 days in jail.[3] The court entered a judgment against Mr. Cottingham for $73,117.69, of which $36,000 was alimony and $37,117.69 was past due child support. On January 10, 2003, Mr. Cottingham filed a Motion for New Trial or Alternatively for Dismissal, which was denied by the court on January 15, 2003. Mr. Cottingham filed his notice of appeal on February 14, 2003.

## II. ISSUES

---

[2] The state's May 22 petition was preceded by two earlier petitions to show cause that the state filed on February 19, 2002 and May 6, 2002. On June 7, 2002, the Williamson County chancery court dismissed both of these earlier petitions without prejudice, instructing the state not to file any further contempt claims "without making it absolutely clear whether such claims are for either Criminal Contempt or Civil Contempt."

[3] The trial court arrived at Mr. Cottingham's 170-day sentence by adding together numerous 10-day jail sentences for separate occurrences of contempt of court. The trial court found there were twelve months in which Mr. Cottingham had failed to pay child support, but due to his overpayment of child support in two other months, Mr. Cottingham received credit for two months, with the result that the court found him to have ten child support violations. For each of the ten child support violations, Mr. Cottingham was sentenced to ten days in jail, for a total of 100 days on the child support violations. The court also sentenced him to ten days for each of the seven years in which he failed to pay alimony, for a total of 70 days in jail on the alimony violations.

Mr. Cottingham raises numerous issues on appeal, which we perceive to be as follows:

Issue 1.        Whether the trial court erred in finding that the Title IV-D contractor had standing to bring a criminal contempt action and an action to enforce the alimony claim.

Issue 2.        Whether the trial court erred in imposing consecutive 10-day sentences for each missed payment found by the court.

Issue 3.        Whether the trial court erred in ordering that Mr. Cottingham be jailed for 170 days, in light of the fact that incarceration would prevent Mr. Cottingham from fulfilling his child support and alimony obligations.

Issue 4.        Whether the trial court erred in finding that Mr. Cottingham's failure to pay was willful.

Issue 5.        Whether the trial court erred in its handling of several procedural matters that arose in the trial of this matter.

## III. ANALYSIS

**Issue 1.        *Whether the trial court erred in finding that the Title IV-D contractor had standing to bring a criminal contempt action and an action to enforce the alimony claim.***

Mr. Cottingham argues that the attorney under contract with the State of Tennessee to enforce child and spousal support orders does not have the standing, under the contract, to seek the imposition of criminal contempt sanctions or to assist clients with alimony issues after the emancipation of the children for whom support was ordered.

We first note that the contract Mr. Cottingham relies upon is not part of the record on appeal. Mr. Cottingham quotes only one sentence of the contract in his appeal brief. Even if there were potential merit to Mr. Cottingham's argument, we would be unable to find in his favor given the absence of the contract from the record on appeal.

However, it is plain that Mr. Cottingham's argument is without merit. Mr. Cottingham is not a party to the contract in question. Nor is Mr. Cottingham a third-party beneficiary of the contract. He cannot be heard to assert rights based on a contract to which he is neither a party nor a third-party beneficiary. As the appellee correctly points out in its appeal brief:

[Mr. Cottingham] has no say in what attorney represents his ex-wife. Nor does he have any say in the terms of the representation, such as whether she has to pay for such legal services or how much the fee will be. Nor does the Appellant have any say

-3-

in the scope of the representation. Those are matters between DHS, its contractor and Ms. Cottingham. The Appellant is not even a third party beneficiary of the contract between DHS and its child support contractor. Thus, the Appellant has no legal right to raise the issue at all.

We agree with the appellees' analysis in concluding that Mr. Cottingham has no standing to contest the scope of representation provided to Donna Cottingham by her counsel. Therefore, this assignment of error is without merit.

**Issue 2.** *Whether the trial court erred in imposing separate, consecutive ten-day sentences for each missed payment found by the court.*

Mr. Cottingham next alleges that the trial court erred in imposing consecutive ten-day sentences for each missed payment, and he cites two cases in support of this proposition, ***Ahern v. Ahern*, 15 S.W.3d 73 (Tenn. 2000)** and ***State Board of Dental Examiners v. Talley*, 203 S.W.2d 364 (Tenn. 1947)**. Unfortunately, neither case stands for the proposition for which Mr. Cottingham cites it, and under Tennessee law it is well-established that multiple consecutive sentences are appropriate for separate occurrences of criminal contempt.

First, we note that in T.C.A. 29-9-103, the Tennessee Legislature gave courts authority to impose ten-day sentences for criminal contempt of court. The statute reads:

**§ 29-9-103. Punishment**.--
(a) The punishment for contempt may be by fine or by imprisonment, or both.

(b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29-9- 108, all other courts are limited to a fine of ten dollars ($10.00).

Further, in T.C.A. 40-35-115 the Legislature provided for separate, consecutive ten-day sentences in the case of multiple occurrences of contempt. The statute reads, in relevant part:

**§ 40-35-115. Multiple convictions**

(a) If a defendant is convicted of more than one (1) criminal offense, the court shall order sentences to run consecutively or concurrently as provided by the criteria in this section.

(b) The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that:

\*      \*      \*

(7) **The defendant is sentenced for criminal contempt**.

(emphasis added). In line with this reading of the applicable statutes, The Tennessee Supreme Court has upheld multiple ten-day sentences for separate acts of criminal contempt, when the "acts constituted separate and distinct" violations of a court's order. *Cable v. Clemons,* **36 S.W.3d 39 (Tenn. 2001)**. Furthermore, and in line with the Tennessee Supreme Court's holding in *Cable*, this court has, on multiple occasions, held that separate and consecutive ten-day sentences are appropriate in the context of repeated defiance of court orders regarding child support, alimony, and visitation. *See Writesman v. Writesman***, 2000 WL 1367965 (Tenn.Ct.App. 2000)**; *Strzelecki v. McGriff***, 2000 WL 48501 (Tenn.Ct.App. 2000)**; *Mulle v. Yount***, 1999 WL 764535 (Tenn.Ct.App. 1997)**.

Therefore, we find this assignment of error to be without merit.

**Issue 3.** *Whether the trial court erred in ordering that Mr. Cottingham be jailed for 170 days, in light of the fact that incarceration would prevent Mr. Cottingham from fulfilling his child support and alimony obligations.*

The next issue on appeal is whether the trial court erred in sentencing Mr. Cottingham to 170 days in jail for criminal contempt, in light of the fact that incarceration would prevent him from making payments on his obligation during his confinement.

The scope of the court's power to punish contempt is defined in T.C.A. 29-9-102, which reads, in relevant part:

The power of the several courts to issue attachments, and inflict punishments for contempt of court, shall not be construed to extend to any except the following cases:

\*       \*       \*

(3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts.

The punishments available to a court in contempt cases is set out in 29-9-103:

**Punishment.** -- (a) The punishment for contempt may be by fine or by imprisonment, or both.

(b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days ....

Contempt of court may be either a civil or criminal offense. Civil contempt "is remedial and coercive in character, designed to compel the contemnor to comply with the court's order. Compliance will result in immediate release from prison." **Black v. Blount, 938 S.W.2d 394, 398 (Tenn. 1996)**. By contrast, the punishment of criminal contempt is not remedial in nature, but, rather, is "intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society." *Id.*

It is clear under Tennessee law that willful failure to comply with court orders to pay child support and alimony is punishable as criminal contempt. *See* **Writesman v. Writesman, 2000 WL 1367965 (Tenn.Ct.App. 2000)**; *Siefker v. Siefker*, **2003 WL 21525263 (Tenn.Ct.App. 2003)**; *Turner v. Turner*, **1997 WL 136448 (Tenn.App. 1997)**.

It is certainly true that Mr. Cottingham will be unable to significantly pay down his enormous arrearage during his incarceration. But in a situation such as this one, where the court found that the defendant's failure to pay court-ordered support was willful and repeated, it is appropriate for the court to vindicate its authority through its power to punish criminal contempt of court.

Therefore, we find that the trial court did not err in sentencing Mr. Cottingham to 170 days in jail for his criminal contempt of court.

**Issue 4.** *Whether the trial court erred in finding that Mr. Cottingham's failure to pay was willful.*

Mr. Cottingham next contends that the trial court erred in finding that his failure to pay his court-ordered child support and alimony obligations was willful. In **Writesman v. Writesman**, 2000 WL 1367965, *5 (Tenn.Ct.App. 2000), the Court said:

> In the trial of a criminal contempt case, the defendant is presumed to be innocent until he is found guilty beyond a reasonable doubt. But once the defendant is found guilty and the case is appealed, he is burdened with the presumption of guilt, and in order to obtain a reversal, he must overturn this presumption by showing that the evidence preponderates in favor of his innocence.

*Robinson v. Air Hydraulics Eng'g Co.*, 214 Tenn. 30, 377 S.W.2d 908, 912 (1964) (citations omitted). The Tennessee Court of Criminal Appeals has stated the standard of review as follows:

> When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the proof adduced at the trial is sufficient to support the findings by the trier of

fact of guilt beyond a reasonable doubt. T.R.A.P. 13(e). We do not re-weigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom.

We will now address the question of whether the evidence preponderates against the court's finding that Mr. Cottingham's failure to pay was willful.

At the end of the November 18, 2002 hearing on the Appellee's petition for contempt against Mr. Cottingham, the trial court delivered its findings from the bench. It is clear from the court's findings that it found Mr. Cottingham's failure to pay his obligations to be willful:

Mr. Cottingham, first of all, I need to tell you something. I find that you are a very intelligent, articulate, resourceful, and pleasant person. I do.

I also find that back in August of 1996, at your final divorce hearing, that I think it was Judge Clark, found you had an income earning capacity of $75,000 a year. That's what she said, and that finding has never changed since---in any other subsequent order.

With regard to the alimony issue, Mr. Cottingham, you completely disregarded the orders of this Court to pay Mrs. Cottingham any alimony. That started from the order pendente lite to the present day, and I find that you have not made a single payment, not one, not a dollar on the alimony, so I'm entering a judgment in the amount of $36,000 and find that from 1996 through 2002, you made no payments of alimony.

With regard to the child support, since 1998, I find that in 1998, you made no payment for the month of December. In 1999, you made no payment for February, May, July, October and December, five months. In 2000, I find you made no payment for January, February and March, three months.

In 2001, I find you made no payment for December, and in this year I find you made no payments for January, February and March, three payments. I also am giving you credit for two overpayments during that same period of time where I found that you paid more than the monthly amount.

As I look through this file I can't help but see that it is replete with petitions for contempt that go back even prior to the divorce decree for not abiding by some order of the Court. Sometimes it wasn't even a support order. It might have been a discovery order. It might have been---who knows, but it's just all through the file.

-7-

This is a criminal contempt petition so I am required to apply the standard of beyond a reasonable doubt. I find that you are in criminal contempt beyond a reasonable doubt for those payments that I have talked about, and I sentence you to ten days for ten months. Those will be the ten months that you didn't pay any child support.

It was twelve months, but I have knocked it off two because you made those overpayments on the other. I also sentence you to ten days for each year that you didn't pay any alimony. That comes to 70 days for the seven years that you haven't paid anything. The total is 170 days. And because I find that you just had absolutely no intention of ever paying any alimony, then I am going to run that time day for day, 170 days, and I'm going to incarcerate you for that number of days beginning today until you have served it.

Having examined the record, we agree with the trial court that there is ample evidence that Mr. Cottingham's failure to pay his court-ordered support obligations was willful. Indeed, Mr. Cottingham's own admissions to the court demonstrate that he willfully chose not to pay on his alimony and child support obligations during months when he was financially able to do so.

For example, on direct examination, when asked why he failed to pay what he could during the months when he paid nothing, Mr. Cottingham admitted his failure to pay was willful:

Q.      Why? Why nothing?

A.      ... Looking back, honestly I could have made 25, $50 payment to show---a token payment. Honestly---and this doesn't relieve me of the responsibility, I know, but I tried that a few times and caught so much grief about it.

*      *      *

Q.      Get less grief with zero than you would a small payment?

A.      Small payments would seem to be an insult.

(November 18 hearing transcript, 31-2.) Despite having made not even a token payment on his child support during these months of non-payment---and despite, as the trial court found, *never* having made a payment on his alimony obligation---Mr. Cottingham listed $30 in "entertainment expenses" on his monthly expense list produced to Appellee during this matter. Moreover, he admitted at trial that in the year 2000 his income was $40,676. Yet he made no payment on his child support in three months of that year.

Under these circumstances, we find that the evidence does not preponderate against the trial court's finding that Mr. Cottingham's failure to pay was willful. This assignment of error is without merit**.**

**Issue 5.**          *Whether the trial court erred in its handling of several procedural matters that arose in the course of Mr. Cottingham's criminal contempt hearing.*

Mr. Cottingham contends that the trial court made several errors in its handling of procedural aspects of the trial, errors that require reversal of the trial court's judgment. We will address each of these issues in turn.

**A.**          *Whether the court erred in failing to rule on all pre-trial motions and issues prior to the day of the trial on the substantive charges in the case.*

Mr. Cottingham alleges that the trial court erred in failing to rule on his Motion to Dismiss prior to the day of trial, and he further alleges that the court erred in failing to rule on his petition to decrease child support and terminate alimony. Because Mr. Cottingham does not specify which motion to dismiss is implicated in his assignment of error, we are left to surmise what he means from our own reading of the record.

The record contains two Motions to Dismiss Criminal Contempt Proceedings, one filed April 30, 2002, and the other filed August 13, 2002. The trial court held a hearing on Mr. Cottingham's first Motion to Dismiss on May 6, 2002, and dismissed, without prejudice, the Appellee's Petition to Show Cause dated February 19, 2002. As to Mr. Cottingham's second Motion to Dismiss, it was ruled on by the trial court after a hearing on August 26, 2002, by an order entered on September 6, 2002, which read: "Respondent's motion to dismiss criminal contempt proceedings is denied. The contempt hearing shall be on September 24, 2002 in Hickman County at 9:00 a.m."

As to Mr. Cottingham's petition to decrease child support and terminate alimony, which he filed on February 11, 1998, it was ruled upon on by the trial court in its order of March 11, 1998, which granted him a reduction in the amount of his child support obligation. Because this order was entered pursuant to an agreement between the parties, it cannot be said that the court failed to rule on his request to terminate alimony. We find that the trial court did not err in failing to rule on any pre-trial motions filed by Mr. Cottingham.

**B.**          *Whether the court erred in refusing to appoint an attorney for the Appellant, and in failing to obtain a knowing and intelligent waiver of the Appellant's right to appointed counsel at all stages of the proceeding.*

Mr. Cottingham alleges that the court erred in failing to appoint an attorney to represent him in the criminal contempt proceedings, and in failing to obtain a knowing and intelligent waiver of his right to counsel in that proceeding. Tenn. R. Crim. P. Rule 44(a) establishes a right have counsel assigned only for indigent defendants:

*Every indigent defendant* shall be entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant executes a written waiver. Before accepting such waiver the court shall first advise the accused in open court of the right to the aid of counsel in every stage of the proceedings. The court shall, at the same time, determine whether there has been a competent and intelligent waiver of such right ....

*Id.* (emphasis added). Mr. Cottingham's motion to be found indigent was denied in an order dated May 1, 2002, and after a hearing on the issue held on April 22, 2002. Because Mr. Cottingham was not found to be indigent, we find that the trial court did not err in refusing to appoint counsel for him or in failing to obtain a waiver of his right to counsel.

### C.      *Whether the petition for contempt was defective in that it does not give sufficient notice of the charges which the Appellant would be required to defend against.*

Mr. Cottingham alleges he was not given sufficient notice of the charges he was required to defend against. He states that, "The Petition does not give the Appellant notice that he is being subjected to nearly six (6) months in jail for the alleged failure to pay. The Plaintiff was under an obligation to advise him of the potential risk in order to allow him to assess his exposure." Tenn. R. Crim. P. 42(b) sets out the notice requirements for criminal contempt proceedings. Rule 42(b) states in relevant part :

> **Disposition Upon Notice and Hearing.** A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest.

The record flatly contradicts Mr. Cottingham's claim not to have been given notice of the charge against him. The record shows that the May 22, 2002 Petition for Contempt gave him explicit notice that he was being charged with criminal contempt and---although this is not required by Rule 42(b)---the penalty he faced for criminal contempt of court. The Petition for Contempt requests:

> [t]hat the Respondent be found guilty of criminal contempt of Court pursuant to Tennessee Code Annotated Section 29-9-101 et seq., and sentenced to the Williamson County Jail for a period of ten (10) days per violation of this Court's orders for a total sentence not to exceed six (6) months.

Mr. Cottingham was given all the notice to which he was entitled. We find, therefore, that this assignment of error is without merit.

***D.*** ***Whether the court erred in trying the civil and the criminal aspects of the case together.***

Mr. Cottingham alleges that the trial court erred in trying the civil and criminal aspects of the case together. We agree with the Appellees, who point out, in their brief on appeal, that there is no requirement that a criminal contempt charge be tried separately from the civil case in which the contempt arose. The case upon which Mr. Cottingham relies, ***Cooner v. Cooner*, 1997 WL 625277 (Tenn.Ct.App. 1997)** is not on point, since it concerns a case in which civil and criminal contempt were tried together. In that case, this court found it improper for the trial court's procedure "fundamentally flawed because of the lack of notice required by Tenn. R.Crim. P. 42(b) and because the trial court was apparently attempting to consider [the appellant's] petitions for criminal contempt and for civil contempt simultaneously." *Id*. at *7.

In the case at bar, the only contempt charge against Mr. Cottingham was for criminal contempt. Therefore, we find no error in the manner in which the court tried Mr. Cottingham's criminal contempt charge.

***E.*** ***Whether the court erred in failing to assure a verbatim record of the proceedings in accordance with the Appellants' rights and the rules of procedure applicable to criminal contempt.***

Mr. Cottingham alleges that he was improperly denied a verbatim transcript of the proceedings. In his appeal brief, Mr. Cottingham states, "Rule 12(g) of the Tenn. Rules of Criminal Procedure provides that a Defendant has the right to a verbatim record of the proceedings. Such was not afforded to him in this case."

We fail to understand the basis for this assignment of error. The record on appeal contains transcripts of two criminal contempt hearings: one transcript that is undated, but filed with the court on April 23, 2003[4], and second transcript, of the November 18, 2002 hearing. Both transcripts are signed by James Surprise, counsel for Mr. Cottingham. We take the signature of Mr. Surprise as an avowal that these transcripts are true and correct accounts of what took place at the contempt hearings. We find, therefore, that this assignment of error is without merit.

## IV. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded to the trial court for such further proceedings as may be necessary. Although we affirm the trial court's decision, it would be well for the trial court, on remand, to consider a reduced jail time, alternative times for service of jail time, and alternative ways of service other than jail time so that the Appellant's ability to earn an

---

[4] Presumably, and as the Appellee suggests, this undated transcript is a transcript of the September 24, 2002 contempt hearing.

income to payoff his substantial obligation is not interrupted.  Any such alternative arrangement is left to the discretion of the trial court.

Costs of the appeal are assessed to the Appellant, William B. Cottingham, and his surety.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.