IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
SEPTEMBER 13, 2007 Session

# METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE v. PRINTER'S ALLEY THEATER, LLC d/b/a BRASS STABLES
### and
# METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE v. C & A ENTERTAINMENT, INC. d/b/a CLUB PLATINUM

**Direct Appeal from the Circuit Court for Davidson County**
**Nos. 06C1815 & 06C1814     Walter Kurtz, Judge**

---

**Nos. M2007-00329-COA-R3-CV & M2007-00391-COA-R3-CV - Filed January 23, 2008**

---

These consolidated appeals involve punishment for criminal contempt. The two defendants are businesses that were providing sexually oriented entertainment, as defined by the Nashville Metropolitan Code of Laws, without licenses. The businesses continued to provide sexually oriented entertainment in violation of injunctions forbidding such activity and later injunctions ordering the businesses to be closed. The businesses were held in contempt of court, and an individual who was a corporate officer or part owner of each business was sentenced to five days in jail in each case, to be served concurrently. The individual appeals, arguing that there was insufficient evidence to support a finding that he should be punished for contempt. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Kenneth Quillen, Nashville, TN, for Appellant

Sue B. Cain, Deputy Director of Law, Andrew D. McClanahan, Kevin C. Klein, John L. Kennedy, Nashville, TN, for Appellee

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

In March of 2006, the Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro"), filed civil warrants and complaints for injunctive relief in the General Sessions Court for Davidson County, alleging that Printer's Alley Theater, LLC d/b/a Brass Stables ("Brass Stables") and C & A Entertainment, Inc. d/b/a Club Platinum ("Club Platinum") were in violation of Metropolitan Code of Laws section 6.54.030 by operating sexually oriented businesses without being licensed by the Sexually Oriented Business Licensing Board. Metro sought to have the defendants enjoined from operating sexually oriented businesses until they were licensed.[1]

The defendants unsuccessfully filed motions to continue the proceedings based on the doctrine of "prior suit pending" because the clubs were involved in a separate suit challenging the constitutionality of Metropolitan Code of Laws section 6.54.030, which addresses sexually oriented businesses. The complaint in the separate case was ultimately dismissed, but it contained a sworn statement signed by Lance Lester as President of Printers Alley Theater, LLC (Brass Stables).

On April 27, 2006, another motion to continue was filed in each case on behalf of Brass Stables and Club Platinum, respectively, stating in part: "Due to a family medical emergency, Mr. Lance Lester, proprietor and principal witness for Defendant, is unable to attend today's hearing at 1:00 PM." The defendants requested that the proceedings be continued "until such time as Mr. Lester is able to appear."

The matters were finally heard on June 28 and 29, 2006, before Judge Gloria Dumas. On June 30, 2006, final orders and injunctions were entered in both cases. The court found that Brass Stables and Club Platinum were in violation of Metropolitan Code of Laws section 6.54.030(A), and accordingly, it ordered the defendants to immediately cease conducting sexually oriented businesses without the required licenses. Both injunctions stated that "[f]ailure of Defendant to comply with this Order will result in a hearing to determine whether Defendant should be held in contempt of court."

On July 3, 2006, Metro filed motions to show cause why the defendants should not be held in contempt in both cases. Metro alleged that both Brass Stables and Club Platinum were in violation of the court's June 30, 2006 injunctions by continuing to operate sexually oriented businesses. Metro submitted affidavits of a Metropolitan Police Officer who entered both clubs on July 1 while working in a plainclothes capacity and observed nude dancers on stage. In each case, Metro requested "[t]hat defendant's principal(s) be jailed until such time as defendant complies with the Court's June 30, 2006 Order[.]"

---

[1] Division IV of the General Sessions Court of Davidson County has been designated an Environmental Court, and the judge of Division IV may order any defendant found guilty of violating a municipal ordinance relating to health to correct such violation. 1993 Tenn. Pub. Acts 316, Chapter No. 212. The judge may issue injunctions and punish a person for contempt who willfully fails to obey such an order. *Id.*

Following a hearing on the motions, Judge Dumas entered a final order in each case on July 12, 2006. In the Brass Stables case, the order provided:

> Upon consideration of the evidence and the argument of counsel, it is hereby
>
> ORDERED, ADJUDGED AND DECREE[D] that the defendant Printer's Alley Theater, LLC and its principals are in willful contempt of this Court's Final Order – Injunction entered on June 30, 2006, by conducting a sexually oriented business on July 1, 2006 without a license on the premises of the Brass Stables located at 206 Printer's Alley, Nashville, Tennessee, 37201. It is
>
> . . .
>
> FURTHER ORDERED that the Court has the power to imprison the principals of the defendant until the contempt is rectified, however the Court cannot do so at this time without further proof as to who are the principals of the defendant.
>
> The Court takes the matter under advisement pending proof of the identities of defendant's principals and pending proof of defendant's profits on July 1, 2006. A further hearing on defendant's contempt of court is scheduled for August 28, 2006 at 10:00 a.m. in Courtroom 5D.

The order in the Club Platinum case similarly provided that "Defendant C&A Entertainment and its principals" were in willful contempt of the June 30, 2006 order, and it also provided that the matter was taken under advisement pending proof of the identities of the defendant's principals at the next hearing.

On July 14, 2006, before the next scheduled hearing, the defendants in each case filed notices of appeal to the circuit court. The Brass Stables appeal was designated Circuit Court Case No. 06C-1814, and the Club Platinum appeal was assigned Circuit Court Case No. 06C-1815. The Second Circuit Court entered orders staying the injunctions and contempt orders entered by the General Sessions Court. It also ordered the defendants to either apply for a license or request a hearing with the Sexually Oriented Business Licensing Board if they considered themselves to be operating sexually oriented businesses. Brass Stables applied for a license, but the Board determined that it should not be granted. Club Platinum requested a hearing before the Board, but it was denied. Both clubs then filed writs of certiorari in the Circuit Court seeking review of the Board's actions in each of their cases. These petitions are not in the record before us, but it appears that they were designated Circuit Court Case Nos. 06C-2196 and 06C-2217. The Second Circuit Court transferred all of these cases – the original general sessions appeals and the writs of certiorari – to the Fifth Circuit Court.

In the Fifth Circuit Court, counsel representing Brass Stables and Club Platinum filed motions to withdraw, claiming in each case that their repeated attempts to contact the defendants

were being ignored. The attorneys filed the affidavits of a courier and two legal assistants explaining their involvement in several attempts to deliver copies of the motions to withdraw and order setting the hearing to Lance Lester at his home address, "at his business, the Brass Stables," and "at his business, Club Platinum."

On September 22, 2006, the Fifth Circuit Court held a hearing regarding all these matters. There is no transcript of this hearing in the record, but the court's order states:

> Present in court were not only counsel, but also Mr. Lance Lester, an owner/agent of "Brass Stables" and "Club Platinum."
> . . .
> The Court pointed out that a corporation and/or legal entity must appear by counsel. . . . Mr. Lester assured the Court that new counsel for the entities would be prepared to go fo[r]ward [at the next hearing].

The court allowed defendants' counsel to withdraw and scheduled additional hearings to address the other issues. On September 28, 2006, the court held a hearing on the issue of whether to dissolve the stay of the general sessions court's injunctions prohibiting Brass Stables and Club Platinum from providing sexually oriented entertainment. The court set aside the Second Circuit Court's order and dissolved the stay of the injunctions, providing that the injunctions remained in full force and effect. Also, the court determined that the contempt orders entered in general sessions were interlocutory orders not yet subject to appeal, and the court remanded the contempt proceedings to the general sessions court. Again, the record does not contain a transcript of this hearing, but the court's order in the Brass Stables case provides: "Defendant, Printers Alley Theatre, LLC, was not represented by counsel, but its president, Lance Lester, appeared in the courtroom and was permitted to address the Court in his capacity as a lay person, not as an attorney representing defendant." The order in the Club Platinum case similarly provides that Lance Lester, president of C & A Entertainment, was permitted to address the court.

On October 17, 2006, Metro filed a "Motion to Jail Persons Responsible for Defendant's Contempt" in the General Sessions Court for Davidson County in both the Brass Stables case and the Club Platinum case. Metro alleged that the clubs had never obtained the required sexually oriented business licenses, yet they continued to provide sexually oriented entertainment. Metro attached affidavits from another Metro Police Officer who entered both clubs in plainclothes on October 14, 2006 and observed nude dancing in violation of the General Sessions Court's injunctions. Metro requested an immediate hearing "to jail the persons responsible," and it attached documents on file with the Tennessee Secretary of State's office regarding the financial and governance rights of Printer's Alley Theater, LLC (Brass Stables) and C & A Entertainment, Inc. (Club Platinum), and their recent annual reports. Metro also included bankruptcy documents that had recently been filed on behalf of Printer's Alley Theater, LLC.

-4-

According to the Articles of Organization filed in 1999 for Printers Alley Theater, LLC (Brass Stables), the company's organizer was Lance Lester. The company was managed by its three members – Lance Lester, David Day, and Jeffrey Robert Ray. Forty percent of the company's financial rights belonged to Lance Lester, as did forty percent of the voting power. Lance Lester was also granted the exclusive authority to transfer the company's real property. In January of 2001, the limited liability company was administratively dissolved for failure to file its annual reports, but on March 14, 2006, Lance Lester submitted the annual reports that were due from 2001 to 2005 in order to have the company reinstated as an LLC. Each of those annual reports listed only two members of the company – Lance Lester as "Chief Manager" and David Day as "Secretary." On the 2005 annual report, Lance Lester was also listed as the registered agent for the company. However, the limited liability company was again administratively dissolved on December 7, 2006, for failure to file its 2006 annual report. The bankruptcy petition dated October 16, 2006, listed Lance Lester as Chief Manager of Printer's Alley Theater, LLC d/b/a Brass Stables, and it listed Lance Lester and David Day as fifty percent equity security holders. Lance Lester had signed the petition declaring under penalty of perjury that the information was accurate.

The corporate charter of C & A Entertainment, Inc. (Club Platinum) was filed with the Secretary of State's Office in 1993. Beginning in 1997, the principal officers of the corporation were listed as David Day, President, and Lance Lester, Secretary. The two men also served as the corporation's Board of Directors. It appears that the corporation was administratively dissolved at some point for failure to file its annual reports, but Lance Lester submitted the past due reports on March 14, 2006 in order for corporate status to be reinstated. On the 2006 annual report, Lance Lester was designated as the corporation's registered agent.

On October 20, 2006, Judge Dumas of the General Sessions Court held a hearing on Metro's motions to jail the persons responsible for the defendants' contempt. The attorney representing Printer's Alley Theater, LLC, in the bankruptcy proceedings appeared on behalf of Brass Stables and informed the court that Brass Stables would soon be forced to cease operations completely because it was converting its bankruptcy petition to a Chapter 7 bankruptcy petition. The attorney stated that he did not represent Club Platinum, and the judge asked if anyone was present on behalf of Club Platinum. The attorney responded, "Mr. Lester is here as the operating officer of Club Platinum. But he is not represented by counsel on that." When Metro's counsel addressed the issue of Club Platinum's contempt, Lance Lester interjected, "If I stop doing adult entertainment there, that would be the – if I stop doing adult entertainment there that – " The judge asked what he was proposing to do, and Mr. Lester clarified, "Run a regular bar, ma'am. It used to be one years ago." Counsel for Metro stated that if the court ordered Club Platinum to close down until it demonstrated that it could or would operate a business in a lawful manner, Metro would not ask that Mr. Lester be jailed for the contempt.

Judge Dumas subsequently entered orders addressing each club on October 25, 2006.  In the Brass Stables case, the order was entitled "Final Order – Contempt of Court," and it stated in part:

> Plaintiff's Motion to Jail Persons Responsible for Defendant's Contempt came to be heard on October 20, 2006.  Counsel for the defendant Printer's Alley Theater, LLC, d/b/a Brass Stables, advised the Court that the defendant was in Chapter 11 Bankruptcy, that the defendant is converting its Chapter 11 bankruptcy to a Chapter 7 bankruptcy and that the defendant will immediately close the Brass Stables, ceasing operations on October 20, 2006.  Upon consideration of the representations of counsel for Printers Alley Theater, LLC, d/b/a Brass Stables, it is hereby
> ORDERED, ADJUDGED AND DECREED that the defendant Printers Alley Theater, LLC, d/b/a Brass Stables close its business and cease operations effective October 20, 2006.

No one was sentenced to serve any time in jail.  The order in the Club Platinum case similarly provided, in part:

> Plaintiff's Motion to Jail Persons Responsible for Defendant's Contempt came to be heard on October 20, 2006. . . .  No attorney of record appeared for defendant, but Mr. Lance Lester was allowed to address the Court.
> Upon consideration of the evidence and the argument of counsel the Court finds that the defendant C & A Entertainment, Inc., d/b/a Club Platinum and its principals continue to be in willful contempt of this Court's Final Order – Injunction entered on June 30, 2006, by conducting a sexually oriented business without a license on the premises of Club Platinum . . . most recently as of October 14, 2006.  It is therefore
> ORDERED, ADJUDGED AND DECREED that defendant C & A Entertainment, Inc., d/b/a Club Platinum close Club Platinum and cease operations of any business on that location effective October 20, 2006.  It is
> FURTHER ORDERED that before the defendant may re-open or operate any business on the premises formerly occupied by Club Platinum, it must file a motion in this Court to do so and it must submit a business plan with the motion describing the business defendant seeks to re-open or operate at that location with sufficient detail for the Court to determine whether a sexually oriented business is being proposed.

Again, no one was sentenced to serve time in jail for the defendant's contempt.

On November 2, 2006, Metro again filed motions to show cause in the general sessions court, alleging that both Brass Stables and Club Platinum were still in operation and continuing to offer sexually oriented entertainment. Metro attached the affidavits of a Metro Police Officer who, working in a plainclothes capacity, paid a cover charge to enter both clubs on October 28, 2006, and observed sexually oriented entertainment taking place inside. Metro requested that Lance Lester be punished for criminal contempt, as chief manager of Brass Stables and corporate secretary of Club Platinum.

Metro's motions to show cause were heard on November 8, 2006, before Judge Dumas. Neither business was represented by counsel, but an attorney appeared to represent Lance Lester individually. The court was informed that Brass Stables had been padlocked by the bankruptcy trustee. The court ordered Mr. Lester to meet officers of the Metro Police Department at Club Platinum for it to be padlocked immediately, and it ordered Mr. Lester to surrender all keys to the business. At the request of Mr. Lester's attorney, the court set a later hearing date for the determination of whether Mr. Lester should be incarcerated for the defendants' contempt.

On November 27, 2006, the general sessions court held a hearing regarding punishment for the contempt in both cases. The court heard testimony from the police officer who most recently observed sexually oriented entertainment at the businesses on October 28, 2006. The court also reviewed the certified copies of the documents filed with the Secretary of State on behalf of Brass Stables and Club Platinum. Mr. Lester did not testify, and the defendants offered no proof. Following the hearing, the court entered final orders in each case, which stated:

> . . . the Court finds that based on defendant's refusal to comply with the June 30, 2006 injunction, and the fact that no less severe sanction has brought defendant into compliance with this Court's prior orders, it is
> ORDERED, ADJUDGED AND DECREED that Lance Lester be remanded to the custody of the Sheriff for a period of five days commencing immediately; it is
> FURTHER ORDERED that at the request of Mr. Lester's counsel, the Court will set a bond, and that bond is set at $750,000;
> . . . .

The court ordered Mr. Lester to serve the five day periods of incarceration consecutively.

Mr. Lester filed notices of appeal to the circuit court in both cases, along with motions to reduce bond. Circuit Court Judge Walter Kurtz reduced the total amount of bail in the two cases to $2000. The appeals were designated Case Nos. 06C3108 and 06C3109. Judge Kurtz subsequently entered an "Administrative Order of Consolidation," which provided:

> Certain substantially similar issues were previously appealed to this Court under Case Nos. 06C1814 and 06C1815, but these

matters were remanded after it was determined that any appeal from the General Sessions Court at that time would be interlocutory in nature and thus not proper. Upon remand the General Sessions Court subsequently took further action, and that action is the subject of the two instant appeals.

Because of the relationship of each current case (Nos. 06C3108 and 06C3109) to its interlocutory predecessor, the Court enters the following administrative order: Case No. 06C3108 is hereby consolidated with 06C1814 and shall hereafter be so designated, while Case No. 06C3109 is hereby consolidated with 06C1815 and shall hereafter be so designated.

The circuit court held a hearing on January 11, 2007. Metro introduced certified copies of the injunctions and contempt orders entered by the general sessions court and the documents filed with the Secretary of State. The police officer who entered both clubs and observed sexually oriented entertainment testified. Mr. Lester did not present any proof. In the final orders, the circuit court found that it could take judicial notice of the procedural histories of the cases, including the pleadings filed and orders entered in Case Nos. 06C1815 and 06C1815 in the general sessions and circuit courts. The court further found, beyond a reasonable doubt, that both defendants were in contempt of the general sessions court's June 30, 2006 Injunction, which originally prohibited the defendants from providing sexually oriented entertainment without a license, and the October 25, 2006 Order, which ordered both clubs to immediately cease operations. The court also found beyond a reasonable doubt that Mr. Lester, in his status as organizer, chief manager, and 40% owner of Brass Stables, and as corporate officer of Club Platinum, had been "inexorably involved in the activities" of the defendants, "especially since he was present in General Sessions Court on October 20, 2006, at the hearing in which that Court found defendant in contempt of its June 30, 2006 injunction." The order stated that the Court was "satisfied that under T.R.C.P. 65.02(2) Mr. Lester received notice of the General Sessions Court's orders and that pursuant to that rule they are binding on him" due to his status as organizer, chief manager and 40% owner of Brass Stables, and as corporate officer of Club Platinum. The Court then found that Mr. Lester had "flaunted the Orders of the General Sessions Court" and sentenced him to five days imprisonment in each case, to run concurrently. The order provided that the term of imprisonment would be stayed if Mr. Lester filed a notice of appeal, until a mandate issued from the Court of Appeals. Mr. Lester filed a timely notice of appeal to this Court.

## II.  ISSUES PRESENTED

Lance Lester presents the following issue for review: whether the evidence was sufficient to find, beyond a reasonable doubt, Appellant Lester guilty of criminal contempt in the Club Platinum case and in the Brass Stables case.

## III. STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them. Tenn. R. App. P. 13(d) (2006); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Watson v. Watson*, 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)). We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.*, 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

In a criminal contempt case, "[w]hen the sufficiency of the convicting evidence is raised as an issue on appeal, this Court must review the record to determine if the proof adduced at trial supports the findings of the trier of fact of guilt beyond a reasonable doubt." *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996) (citing Tenn. R. App. P. 13(e)). We do not reweigh the proof, and the defendant has the burden of demonstrating to this Court why the evidence is insufficient to support the verdict. *Id.* A guilty verdict removes the presumption of innocence, and it is replaced with a presumption of guilt. *Id.* "We will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt." *Id.*

## IV. DISCUSSION

Tennessee Rule of Civil Procedure 65.02(2) provides: "Every restraining order or injunction shall be binding upon the parties to the action, their officers, agents and attorneys; and upon other persons in active concert or participation with them who receive actual notice of the restraining order or injunction by personal service or otherwise."[2] Thus, an injunction binds not only the parties to an action, but also their servants or agents and those acting in collusion or combination with them. *National Medical Care, Inc. v. Gardiner*, No. 85-154-II, 1986 WL 3157, at *2 (Tenn. Ct. App. M.S. Mar. 12, 1986) (citing *Rigas v. Livingston*, 178 N.Y. 20, 70 N.E. 107 (1904)). An injunction is "enforceable by contempt proceedings against the corporation, its agents and officers and those individuals associated with it in the conduct of its business," and even, in appropriate circumstances, those to whom a business has been transferred. *Id.* (quoting *Walling v. James V. Reuter, Inc.*, 321 U.S. 671, 88 L. Ed. 1001, 64 S. Ct. 826 (1944)). "It is not necessary that a person who is charged with contempt be a party to the underlying proceeding." *Quality First Staffing Services v. Chase-Cavett Services, Inc.*, No. 02A01-9807-CH-00205, 1999 WL 281312, at *1, n.1 (Tenn. Ct. App.

---

[2] The judge of Division IV of the General Sessions Court of Davidson County has the power to issue injunctions, both mandatory and prohibitory, as provided in Rule 65 of the Tennessee Rules of Civil Procedure. 1993 Tenn. Pub. Acts 316, Chapter No. 212.

W.S. May 7, 1999). Tennessee Code Annotated section 29-9-102(3) explicitly allows courts to inflict punishments for contempt for "the willful disobedience or resistance of any officer of said courts, party, juror, witness, *or any other person* to any lawful writ, process, order, rule, decree or command of said courts." *Id.* (emphasis ours). It is obvious that a corporation can comply with an injunction only by acting through its agents. *Id.* at *4.

In this case, Printer's Alley Theater, LLC d/b/a Brass Stables, C & A Entertainment, Inc. d/b/a Club Platinum, and consequently their officers and agents, were enjoined from operating sexually oriented businesses without a license on June 30, 2006. On July 12, 2006, the general sessions court found that "defendant Printer's Alley Theater, LLC and its principals" and "Defendant C&A Entertainment and its principals" were in willful contempt of its previous orders. However, no one was punished for violating the court's orders. Both clubs continued to provide sexually oriented entertainment even after being ordered to cease all operations on October 20, 2006. On November 27, 2006, the court finally punished Lance Lester for the clubs' contempt, after noting that "no less severe sanction has brought defendant into compliance with this Court's prior orders." The circuit court similarly noted that Mr. Lester had been "inexorably involved in the activities" of the clubs, and that he had "flaunted the Orders of the General Sessions Court."

We find the evidence sufficient to support the trial court's finding that Mr. Lester should be punished for the contemptuous operation of Brass Stables and Club Platinum, as he was an officer or agent of both operating entities. Regarding the limited liability company operating Brass Stables, Mr. Lester was its organizer, chief manager, one of two managing members, its registered agent, and a fifty percent equity security holder in the company as of October 16, 2006. With regard to the corporation operating Club Platinum, Mr. Lester was one of two principal officers of the corporation, one of two people on the Board of Directors, and the corporation's registered agent. It is clear that Mr. Lester had actual notice of the injunctions preventing sexually oriented entertainment at the businesses, because, as the circuit court judge noted, "Mr. Lester has been interwoven with these two corporate entities from the get-go through this long history of litigation" and was the "presence of the corporation in . . . court in both these cases." For example, during his numerous appearances in court, Mr. Lester sought continuances representing to the court that he was "proprietor and principal witness for" both clubs, he addressed the court regarding his ability to retain an attorney to represent the clubs, and he was present in court when the second injunction was entered, when he suggested that he could "[r]un a regular bar" at Club Platinum "[i]f I stop doing adult entertainment there."

On appeal, Mr. Lester argues that the trial court erred in considering his presence in the "whole history and chronology" of the cases because it "muddies the issues with motions, pleadings, orders and transcripts filed prior to November of 2006 when Mr. Lester first retained counsel." He claims that his attorney had "no notice of what this 'evidence' might include, nor any meaning [sic] opportunity to be heard." He simply makes the conclusory allegation that the inclusion and consideration of these matters "violated Appellant's Due Process and Law of the Land rights. U.S. Const. amend. XIV and Tenn. Const. art. I, § 8." Without any further citation to authority, Mr.

-10-

Lester claims that the record before us should have been limited to the transcript of the final contempt hearing and the exhibits that were introduced at that time.[3]

Mr. Lester did not list any constitutional issues in his Statement of Issues Presented for Review. Instead, he vaguely asserted in the argument section of his brief that his due process and law of the land rights have been violated. Courts have consistently held that issues must be included in the Statement of Issues Presented for Review required by Tennessee Rules of Appellate Procedure 27(a)(4), and an issue not included is not properly before the Court of Appeals. *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). In addition, in order for an issue to be considered on appeal, a party must, in his brief, develop the theories or contain authority to support the averred position as required by Tennessee Rule of Appellate Procedure 27(a). *Id.* Mr. Lester has not explained or cited authority to support his contention that it was improper for the circuit court to consider the record and history of the proceedings that had taken place in the general sessions and circuit court. Mr. Lester had repeatedly represented to the courts that he was an owner or agent of the clubs and that he had the ability to control their operation. We find no due process violation in the trial courts' considering that fact when determining who should be punished for the clubs' contempt.

Mr. Lester also points to the fact that the Metro Police Officer who entered the clubs did not know whether Mr. Lester was present on that particular night. Again, he does not cite any authority to suggest that someone must have witnessed his physical presence, and we have not encountered any. Mr. Lester's arguments are without merit, and he has not met his burden of illustrating to this Court why the evidence is insufficient to support the trial court's criminal contempt verdict.

## V. CONCLUSION

For the aforementioned reasons, we affirm the decisions of the circuit court. Costs of the appeals are taxed to Appellant, Lance Lester, and his surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[3] Mr. Lester presented these same arguments to this Court when objecting to Metro's designation of the record on appeal. The Middle Section of this Court overruled Mr. Lester's objection because disputes concerning the content of the record lie within the exclusive province of the trial court pursuant to Tenn. R. App. P. 24(e).