# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
July 19, 2012 Session

## STATE OF TENNESSEE, EX REL., TONIA M. BERNARD v. ROBERT E. SMITH

**Direct Appeal from the Chancery Court for Dyer County**
**No. 00C-101      Tony A. Childress, Chancellor**

_____

**No. W2011-01154-COA-R3-CV - Filed October 9, 2012**

_____

Appellant/Father appeals the trial court's finding that he was in criminal contempt for failure to pay child support. Upon review of the record, we reverse and dismiss the criminal contempt charges.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Dismissed**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Martin E. Dunn, Dyersburg, Tennessee, for the appellant, Robert E. Smith.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General and Warren Jasper, Senior Counsel, Tennessee, for the appellee, State of Tennessee, ex rel., Tonia Bernard.

## MEMORANDUM OPINION[1]

_____

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

In April 2000, Robert E. Smith ("Father") and Tonia M. Bernard ("Ms. Bernard") were divorced by entry of a final decree of divorce. Thereafter, on January 25, 2007, the State of Tennessee, providing child support enforcement services to Ms. Bernard, filed a petition in the Dyer County Chancery Court to set child support. Following a hearing, the trial court entered an order granting Ms. Bernard a judgment for arrears in the amount of $1,975.38 and set child support at $265.00 per month, with $51.00 of that amount going toward the arrearage.

On January 7, 2008, the State filed a petition for contempt against Father. After conducting a hearing, the trial court entered an order to issue an income assignment and monitor compliance. Thereafter, on September 11, 2008, Father entered a guilty plea of contempt for willful failure to pay eighteen child support payments and was sentenced to 180 days in jail. The amount of arrearage was found to be $4,101.38, and child support was set at $265.00 per month as previously ordered by the trial court.

On June 23, 2009, the State filed another petition for contempt against Father. At the hearing on the matter, the trial court heard testimony from witnesses that Father made no child support payments from January 1 to June 17, 2009, that Father worked during that time period, and that Father stated that he could make the agreed upon payments. Moreover, Father testified that he earned about $300 per month working up to three jobs, and that he was currently living with, and providing support for, his ex-wife and their three children.[2] At the conclusion of the hearing, the trial court found that Father had the ability to make some payments from January through May 2009, but chose to spend money on things that were not necessities rather than making any payments toward his child support obligation. Accordingly, on April 14, 2011, the trial court entered a final order concluding that:

> During the period of time from January 1, 2009 through June 17, 2009, [Father] had several health issues such as knee and breathing problems. Despite these problems, [Father] earned $300.00 per month in income working as a DJ during the period of time from January 1, 2009 through June 17, 2009. During the period of time from January 1, 2009 through June 17, 2009, [Father] used the limited resources he did earn to pay rent and buy food and gasoline. During the period of time from January 1, 2009 through June 17, 2009, [Father]'s brother helped him financially. While [Father] did not have lots of money, he used some of the money that he did have to buy cigarettes and minutes for a cell phone. Despite having money to buy cigarettes and minutes for a cell phone, which the Court does not find to be necess[ities], [Father] did not pay one cent (.01¢) of child support in January, February,

---

[2]The ex-wife referred to in Father's testimony was not Ms. Bernard.

March, April or May of 2009. In total, [Father] did not make five (5) child support payments. Granted, [Father] was not in a financial position to pay the entire amount of child support that he was ordered to pay. [Father], however, did have the ability to pay at least something when the support payments for January, February, March, April and May of 2009 where [sic] due, but instead of paying at least something, [Father] made the choice to spend the money he could have pay [sic] toward his ordered child support payment on cigarettes and minutes for a cell phone. The Court finds that the [State] has proven beyond a reasonable doubt that [Father] did not pay any child support during the months of January, February, March, April and May of 2009; that he had the ability to pay at least some amount in the months of January, February, March, April and May of 2009; and that his failure to pay at least some amount during the months of January, February, March, April and May of 2009 was willful. Accordingly, [Father] is in criminal contempt of the Court's order for failure to pay at least some amount of support in the months of January, February, March, April and May of 2009, and [Father] is sentenced to ten (10) days for each missed payment, for a total of fifty (50) days; all suspended except for ten (10) days. [Father] shall report to the Dyer County jail on May 20, 2011 by no later than 6:00 p.m. to begin serving of [sic] his ten (10) day sentence.

Thereafter, Father timely filed a notice of appeal to this Court.

### *Issue Presented and Standard of Review*

The sole issue presented for our review is whether the trial court erred in finding Father in criminal contempt for failing to pay child support. We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law de novo, however, with no presumption of correctness. Tenn. R. App. P. 13(d). Our review of a trial court's application of the law to the facts is de novo, with no presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

### *Discussion*

The willful disobedience of "any lawful writ, process, order, rule, decree, or command" is punishable as criminal contempt. Tenn. Code Ann. § 29-9-102(3) (2000). A defendant accused of criminal contempt is presumed to be innocent, and the prosecution

bears the burden of proving guilt beyond a reasonable doubt. *Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006) (citing *Shiflet v. State*, 217 Tenn. 690, 400 S.W.2d 542, 544 (1966)). Once convicted of criminal contempt, however, the defendant loses the presumption of innocence. *Id.* Thus, on appeal, the issue becomes whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* ((citing Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979); *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003); *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn.1996)).

As this Court stated in *State ex rel. Martin v. Lynch*, No. M2009-00994-COA-R3-JV, 2010 WL 3064365 (Tenn. Ct. App. Aug. 5, 2010):

> The contemptuous offense of willfully failing to pay child support has two essential but distinct elements: (1) the defendant had "the ability to pay at the time the support was due," and (2) "the failure to pay was willful." *Murray v. Neiswinter*, No. M2005-01983-COA-R3-CV, 2007 WL 565823, at *6 (citing Tenn. Code Ann. § 29-9-102; quoting *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn.2000)). Whether the alleged contemnor had the "ability to pay" and whether the failure to pay was "willful" require distinct findings of fact, and both must be proven beyond a reasonable doubt in order to find a person in criminal contempt. *Id.* (citing *Martin v. Moats*, No. M2004-01921-COA-R3-CV, 2006 WL 2527641, at *2 (Tenn. Ct. App. Aug. 24, 2006); *McPherson v. McPherson*, No. M2003-02677-COA-R3-CV, 2005 WL 3479630, at *4 (Tenn. Ct. App. Dec. 19, 2005)).

*Id.* at *2. In the case at bar, Father does not dispute the fact that he failed to pay child support from January 1, 2009 through June 17, 2009. Instead, Father argues that he did not have the ability to pay the amount of support ordered at the time it was due, and therefore his failure to pay was not willful.

At the hearing, the evidence considered by the trial court consisted of the testimony of four witnesses, namely: (1) Andrea Joy ("Ms. Joy");[3] (2) McKenzie Hughley ("Ms. Hughley");[4] (3) Father; and (4) Charles Smith ("Mr. Smith"), Father's brother. Ms. Joy's

---

[3]Although Ms. Joy's position was not indicated in the record, the State's brief provides that she "appears to be the child support clerk at the court."

[4]Ms. Hughley's position was also not indicated in the record, but the State's brief provides that "she (continued...)

participation in this matter consisted of only one answer to one question posed by the State. When asked whether Father made any child support payments from January 1, 2009 through June 17, 2009, Ms. Joy answered "[n]o." Ms. Hughley testified that Father told her that he did not have a full-time job, but did work as a DJ part-time, and on average would work two to three times each month, earning approximately $75.00 to $100.00 each time. Ms. Hughley further testified that Father told her that he would have no problem paying the amount of child support ordered by the trial court.

Next, Father confirmed that he worked as a DJ part-time during the period of contempt, and that he earned approximately $300.00 each month. Father discussed the basic living expenses he incurred each month, which included rent of $150 per week. Also, Father stated that he was diagnosed with multiple health problems including COPD, valve leakage, "bad knees", and a rare blood disease which is causing his spine to fuse together. Father stated that his health issues caused him a great deal of pain, required him to take numerous prescription medications, and greatly hindered his ability to get around, much less work. Father admitted that, during the period of contempt, he purchased gas for transportation,[5] minutes for his cell phone, and one or two packs of cigarettes. Moreover, Father testified that he was on food stamps during the period of contempt, and had applied for Social Security disability, but his claim had not been approved at the time of the hearing.

Mr. Smith, Father's brother, testified at length regarding the financial support he provided Father during the period of contempt. Mr. Smith often helped Father pay his rent. Whenever the utilities were turned off at Father's residence, Mr. Smith paid to have them turned back on. Since Mr. Smith worried about his brother's health issues, he gave Father money for gas and purchased minutes for his cell phone so that they could keep in touch. Also, Mr. Smith and his wife bought food for Father when he could not afford it, and sometimes brought Father food from their own home. Furthermore, Mr. Smith often drove Father to the doctor, paid his co-pay, and paid for the prescriptions that he needed. Father never borrowed money from Charles to pay for child support.

After thoroughly reviewing the record, we conclude that the evidence presented was insufficient for any trier of fact to find beyond a reasonable doubt that Father's failure to pay child support was willful, or that he had the ability to pay the amount ordered at the time it

---

[4](...continued)
appears to have been the child support case worker at the time of the March 2010 hearing."

[5]Although Father did not own a vehicle during the period of contempt, he testified that he was engaged at that time, and that he purchased gas for his fiancee's car so that they would have transportation when necessary.

was due. The trial court ordered Father to pay $265.00 per month in child support. It is undisputed, however, that Father earned, at most, approximately $300.00 per month. Taking into account Father's basic living expenses, including $150.00 per week for rent, it is clear that Father's expenses greatly exceeded his income. While we acknowledge that Father purchased one or two packs of cigarettes and minutes for his cell phone to keep in contact with his brother during the period of contempt, we do not consider these facts dispositive. Even the trial court acknowledged in its final order that "[Father] was not in a financial position to pay the entire amount of child support that he was ordered to pay." But for the support of his brother, Father would not have been able to cover the costs of his basic living expenses. Although the evidence presented by the State established that Father made no child support payments from January 1, 2009 to June 17, 2009, the evidence was insufficient to prove that he had the ability to pay the amount ordered at that time, and that his failure to pay was willful. Accordingly, we reverse the judgment of the trial court. As a result, "[t]he constitutional provisions against double jeopardy require that the criminal contempt charges be dismissed." *Cottingham v. Cottingham*, 193 S.W.3d 531, 539 (Tenn. 2006) (citing *State v. Hutcherson*, 790 S.W.2d 532, 534-35 (Tenn. 1990)); *see also State v. Wood*, 91 S.W.3d 769, 773 (Tenn. Ct. App. 2002) ("[Criminal contempt] is enough of a crime that the double jeopardy provisions of the state and federal constitutions prohibit a subsequent contempt prosecution after a contempt proceeding starts and comes to an inconclusive end in another court.") (citing *Ahern v. Ahern*, 15 S.W.3d 73 (Tenn. 2000)).

## *Conclusion*

For the foregoing reasons, we reverse the judgment of the trial court. Due to the insufficiency of the evidence, the criminal contempt charges are dismissed. Costs of this appeal are taxed to the Appellee, State of Tennessee, ex rel., Tonia M. Bernard, for which execution may issue if necessary.

                                         _____

                                         DAVID R. FARMER, JUDGE